WALKER v. WESTERN UNDERWRITERS' ASS'N.

1. EVIDENCE—WEIGHT OF TESTIMONY—MATTERS CONSIDERED.

In considering the testimony of a witness, his unfamiliarity with our language and customs, and his capacity for comprehending and answering questions propounded through the medium of an interpreter, must be borne in mind.

2. INSURANCE—ACTION ON POLICY—LOSS BY FIRE AND EXPLOSION —SEPARATION OF LOSSES.

Where, in an action on a fire policy, it appears that a gasoline stove explosion was followed by fire causing loss, defendant is not entitled to verdict because the loss arising from the explosion is not separated from that caused by fire, where there is no evidence that the explosion caused any loss.

3. SAME—AMOUNT OF LOSS—DIFFICULTY OF ASCERTAINMENT.

There being evidence of the loss of enumerated articles which must have been of some value, the fact that it may be difficult, and in many instances impossible, for the jury to arrive at their exact cash value, will not authorize the direction of a verdict for defendant.

4. SAME—FALSE SWEARING BY INSURED.

The fact that insured has made contradictory or untrue statements does not authorize the direction of a verdict for defendant, provided such statements were made in good faith and without intent to defraud.

5. SAME.

The act of insured in swearing to his loss as being much less than he knew it actually was could not involve an intent to defraud, and did not constitute false swearing such as to avoid the policy.

6. SAME—ACTION ON POLICY—INSTRUCTIONS.

In an action on a fire policy, where the amount of the policy was $400, and there was no definite testimony that the property, in gross or by items, was worth $400 or over, although it was valued at between $400 and $500 in the proofs of loss, a charge that plaintiff's testimony showed that the property was worth $700 and that plaintiff claimed it was worth $700 was erroneous.

Error to Wayne; Frazer, J. Submitted October 19, 1905. (Docket No. 79.) Decided December 4, 1905.

Assumpsit by Edward R. Walker against the Western Underwriters' Association on a policy of insurance. There was judgment for plaintiff, and defendant brings error. Reversed.

*Leo M. Butzel* and *George E. Stevenson,* for appellant.

*George F. Monaghan,* for appellee.

BLAIR, J. A Michigan standard form policy was issued to Joseph Zentarski March 30, 1903, insuring his household furniture, wearing apparel, etc., and also the stock of leather, shoes, boots, tools, machines, etc., while contained in the shoe store and dwelling, No. 1061 St. Aubin avenue, Detroit, Mich., against loss by fire to the amount of $400. Attached to the policy is a gasoline permit allowing Zentarski to operate a gasoline or vapor stove. On the 5th day of May, 1903, a fire broke out, caused by the ignition and explosion of the gas or vapor from a gasoline stove, and the insured property was entirely destroyed. Soon after the fire the policy was assigned to plaintiff, a member of a firm of adjusters of fire losses, who brought this suit to recover for the loss covered by the policy.

Zentarski was the only witness sworn as to the cause of the fire or the amount of the loss. As to the cause of the fire, he testified that, when he was going from the "toilet room" in the back yard to the house, he heard the noise of the explosion, and, "when the can exploded, the fire followed."

" *Q.* How much gasoline did you have in your can ?
" *A.* I cannot say for sure. I didn't measure it.
" *Q.* Did you have two or three quarts ?
" *A.* I know there was gasoline in the can, but I can't tell how many quarts there were.
" *Q.* Did you pour it yourself in the stove ?
" *A.* The day before I did. * * *

" *Q.* How much damage did you suffer because of that fire ?

" *A.* About $700.

" *Q.* What did that $700 cover ?

" *A.* I cannot mention each particular article that I had, but I had machinery and tools and furniture and so on.

" *Q.* Did the $700 loss cover anything outside of that furniture in the dwelling and the articles insured in your place of business ?

" *A.* Why, it is the store and the dwelling place, and I had some heirlooms that were worth quite a bit.   *   *   *

" *Q.* Did you go to the company to get any settlement ?

" *A.* Yes, sir ; I wanted to settle the matter.

" *Q.* What was said to you by the agent of the company at that time ?

" *A.* They told me to write up all the articles on a sheet of paper, and that the agent would be up there from Chicago, and that they could settle the matter up.

" *Q.* Did you make out at that time any list of things that you lost ?

" *A.* I could not make a list of all the things that were lost, because I could not remember all. They told me to make a list at once, and I had a very short time, so I could not think of all things that were lost in the fire.

" *Q.* Did you at any other time make out any other list ?

" *A.* I made amendments later to the list. I have the list of all the articles here now (showing paper). This is the amended list of articles.

" *By Mr. Butzel:* When did you find out your loss was $700 under this policy ?

" *A.* After the fire—as soon as they told me to make out another policy. I don't remember exactly the date. It wasn't a week after, but I don't remember the date.
*   *   *

" *Q.* You didn't own any bicycle, did you ?

" *A.* Yes, sir;   *   *   *   I bought it from my friend.

" *Q.* How much did you pay him for it ?

" *A.* I got it for nothing.

" *Q.* What kind was it ?

" *A.* It was a bicycle—what do I know about bicycles ?
*   *   *

" *Q.* What did you give him for it ?

" *A.* I gave $35 in cash, and he gave me the bicycle.

" *Q.* Didn't you say two minutes ago that he gave it to you for nothing ?

" *A.* The balance that was to be paid on it—he gave that to me.

" *Q.* What was the balance to be paid on it ?

" *A.* The bicycle was worth $50.

" *Q.* What did you give for it ?

"*A.* I paid $35, and the balance he told me I could keep. * * *

" *Q.* As a matter of fact, you don't know whether it was worth $5 or $100 ?

"*A.* No; I don't know. I only know that it was worth to me that much. * * *

" *Q.* Do you know anything about the value of clothes ?

"*A.* If I paid for it myself, I ought to know what it is worth. * * *

" *Q.* Did you lose a black suit ?

"*A.* Yes, sir.

" *Q.* What did you pay for it in the old country ?

"*A.* I cannot remember now for certain—probably $40.

" *Q.* You paid $40 for a suit in the old country ?

"*A.* I don't know for certain. I think it was. * * *

" *Q.* Did you come from Germany—northern Germany ?

"*A.* No, from Russia, Warsaw.

" *Q.* Do you know how much $40 is in the money of the Russian Empire ? Do you know what $40 is in the coin of the Russian realm ?

"*A.* I know that the value of a ruble in Europe is as much as the value of a dollar in this country, and I figure on that value.

" *Q.* So that, when you say $40, you mean 40 rubles?

"*A.* Yes; it is the same value.

" *Q.* So that you don't mean American dollars at all when you are swearing to your loss ?

"*A.* I know it is the same value to me. You buy more for a ruble in Europe than I do here for a dollar.

" *Q.* You are estimating your loss in rubles instead of in American dollars ? When you say $40, you mean 40 rubles in Russia, that the suit was worth ?

" *A.* Yes; it makes no difference to me.

" *Q.* Answer it ' Yes,' or ' No.' Is that what you mean ?

" *A.* Yes, sir.

" *Q.* How much did you pay for the sewing machine ?

" *A.* $75.

" *Q.* From whom ?

"*A.* From the Singer Company.   *   *   *

"*Q.* How much stock did you have?

"*A.* I cannot tell for sure, just exactly.

"*Q.* Give us your best judgment.

"*A.* I know I had rubber cement and leather and strings and so on.

"*Q.* How much was it worth at the time of the fire?

"*A.* It was more worth than it was insured.

"*Q.* How much were these particular things worth— your stock?

"*A.* I don't know for certain.   I don't know the exact sum.

"*Q.* Have you sworn to it all?

"*A.* Everything that was burned there and destroyed was worth about $700.

"*Q.* Have you ever sworn to the specific list of property destroyed and the itemized statement of the value of each particular item claimed to have been destroyed in the fire?

"*A.* Yes; I did when the list was made.

"*Q.* You don't know what furniture is worth, do you?

"*A.* I paid for them, and I did know what they were worth.

"*Q.* Is it not a fact that Mr. Walker prepared a list that you swore to?

"*A.* I made it myself.

"*Q.* Didn't he suggest the values to you?

"*A.* No.

"*Q.* Didn't he tell you your sewing machine was worth $75 instead of $50, as you had sworn once under oath?

"*A.* No.

"*Q.* What did you swear to it different ways at different times for?

"*A.* I swore just as I said.

"*Q.* In what way did you swear?

"*A.* I know that the contract was for $75.

"*Q.* What did you swear under oath for once that the thing was only worth $50?   Have you sworn under oath it was worth $50 at any time?

"*A.* I have sworn to the whole amount.   I didn't swear that the machine was worth $50.

"*Q.* Have you ever sworn to it?   What do you remember about what value you placed on your stock of leather and your shoestrings and your nails and your hooks and your polish?

"*A.* I knew right after the fire broke out, but I don't remember exactly to it.

"*Q.* Did you have a wooden bed ?

"*A.* Yes, sir.

"*Q.* How much was it worth ?

"*A.* For the bed alone I think I paid $10.

"*Q.* How long had you had it ?

"*A.* About three months.

"*Q.* Did you have a mattress ?

"*A.* I didn't sleep without it.

"*Q.* What was that worth.?

"*A.* I didn't think over it after the fire, and I don't remember today.

"*Q.* You know the kind ? Tell us what you would swear the thing was worth when it was burned up. I want to know what loss and damage you figure.

"*A.* I remember the bed was $10, but I don't remember what the value of the mattress was.

"*Q.* What was the spring worth ?

"*A.* What I don't remember I would not say.

"*Q.* Did you know in May any better than you know now ?

"*A.* I did.

"*Q.* Why ?

"*A.* Because the company was never straight with me, and I am almost crazy over the matter, and I don't remember exactly.

"*Q.* Did you have a pair of pillows ?

"*A.* Yes, sir.

"*Q.* What did you figure they were actually worth at the time of the fire ?

"*A.* I know there were two, and I don't remember exactly what I paid for them.

"*Q.* You can't tell us the value or worth of any of those things that I have been asking you about the last three or four minutes ?

"*A.* I don't remember exactly now, but I did remember right after the fire. I think for the pillow I have paid about two and a half.

"*Q.* Do you know what your underwear was worth ?

"*A.* Yes, sir.

"*Q.* How much did you swear it ?

"*A.* I paid for the woolen shirt $1.

"*Q.* What did you pay for the two suits of underwear ?

"*A.* Two dollars for underwear.

"*Q.* Will you tell us what the loss of a brush and comb was worth to you?

"*A.* About $2.50.

"*Q.* $2.50 for a brush and comb?

"*A.* Yes, sir; it was a nice brush, and it was from Europe.   *   *   *

"*Q.* What was the other suit that you brought from the old country worth?

"*A.* I don't remember exactly what I paid for the other suit.

"*Q.* You think that one black suit that was one year old was worth $40?

"*A.* Yes, sir; I paid about that amount.

"*Q.* It was a year old?

"*A.* Not exactly a year.

"*Q.* When you came over to America?

"*A.* It is pretty near two years since I am in this country, but the suit my friend brought here from Europe for me.

"*Q.* What did you pay your friend for it?

"*A.* I paid when I was in Europe for that suit, but I left it there.

"*Q.* What did you pay for the suit?

"*A.* I stated how much I paid.

"*Q.* Say it again.

"*A.* I have it written down.   You had better see what I said before.   You have got the list and know what it is.

"*Q.* Here is a list.   You had it in your pocket this morning?

"*A.* If somebody would read the list I have got and explain it to me, I am willing to testify what I have on the list.

"*Q.* Do I understand the list was prepared first and shown you first, and then you swore to it after it had been prepared?

"*A.* I made the list and then I swore to it.

"*Q.* So that you would recognize the list that you swore to, if you saw it?

"*A.* I know the list I have in my pocket.

"*Q.* How do you know it if you do not read English?

"*A.* Because I give the names of the articles, and Mr. Pasternecki took them down.

"*Q.* Did you get the value?

"*A.* Yes, sir.

"*Q* How many kinds of values did you give?

"*A.* I don't remember so many months ago.   *   *   *

I valued a value upon each article, but I don't remember, it is so many years ago. You have it on the list.

" *Q.* You put one value opposite each item ?

" *A.* Yes, sir.

" *Q.* That is all you did put opposite each ?

" *A.* Yes; I made the list and placed a value on each article and swore to it.

" *Q.* When you say that the stuff that was insured was damaged $700 you mean the difference in the condition before the occurrence on that day and the condition after the occurrence on the day of the fire ?

"*A.* I had many heirlooms.

" *Q.* You had others to read the proofs of loss before you swore to them ?

"*A.* Yes, sir.

"*Q.* Both proofs ?

"*A.* I only swore to one.

" *Q.* But the one that you swore to you understood that you were swearing to perfectly.

" *A.* Yes; the one I had in my pocket, which I swore to, I understood.

" *By Mr. Monaghan:*

" *Q.* Were the articles that were in your place at the time of this fire partially burned up, or all burned up.

"*A.* They were all burned up.

" *Q.* Is this the proof of loss that you signed ?

"*A.* Yes; this is my signature."

Proofs of loss received in evidence and marked "Exhibit 3."

Defendant introduced in evidence Exhibit 4, which reads as follows:

"STATE OF MICHIGAN, ⎱ ss.:
   County of Wayne. ⎰

" Joseph Zentarski, being duly sworn, deposes and says that he is the owner and proprietor of a certain shoe business at No. 1061 St. Aubin avenue, Detroit, Michigan. That on the 28th day of April, A. D. 1903, there was contained in said premises the following goods and chattels, to wit:

| | |
|---|---|
| Clothing and wearing apparel | $100 00 |
| Bicycle | 50 00 |
| Cook stove | 11 75 |
| Gasoline stove | 3 00 |

| | | |
|---|---|---|
| Bed frame with clothes | $16 | 50 |
| Table | 5 | 00 |
| Dressing case | 10 | 00 |
| Two pictures | 7 | 00 |
| Leather, polish, strings, nails and hooks | 100 | 00 |
| 17 paid repaired shoes | 12 | 75 |
| 1 sewing machine | 50 | 00 |
| 1 counter | 16 | 00 |
| Shoemaker's tools | 40 | 00 |
| Total | $422 | 00 |

"Deponent further says that the above amounts correctly state and set forth the cost and value of the different items of property herein contained.

.          [Signed]       "Joseph Zentarski.

"Subscribed and sworn to before me this 29th day of April, A. D. 1903.

"Sherman Littlefield,
"Notary Public, Wayne County, Michigan.
"Witness: Albert C. Lauzon."

Defendant thereupon rested, and moved the court to direct a verdict, for the reasons:

"*First.* That there is no testimony here that separates the loss on the insured property that resulted from the explosion from the loss that accrued to this property by fire. The policy does not insure against loss to property from the explosion.    It does insure against loss by fire.

.   "*Second.* That there is no competent proof to show or warrant the jury in finding what the actual cash value of the property destroyed was.    The policy provides, not for the cost, but for the cash value at the time of the loss. There is absolutely no proof here of that fact at all."

The refusal of the court to grant this motion, and to give requests to the same effect, constitute the principal questions raised by the assignments of error.

In considering the testimony of the plaintiff's assignor, all of which, in substance, has been set forth above, so far as it relates to these questions, his unfamiliarity with our language and customs, and his capacity for comprehending and answering the questions propounded through the medium of an interpreter, must be borne in mind.

We do not think there is any force in the proposition that plaintiff cannot recover because the damages resulting from explosion and from fire were not apportioned. There is no evidence that the explosion did any damage. On the contrary, Zentarski swore that the articles were "all burned up;" that "everything that was burned there and destroyed was worth about $700." Plaintiff at least made a prima facie case that the property was destroyed by fire, and this was sufficient to take the case to the jury. There is no presumption or even probability that the explosion of the gas of a gasoline can or stove would do serious injury from the forces of the explosion itself.

The second ground of defendant's motion, and his requests upon the subject, upon which he relies, except the seventh, proceed upon the theory that there was no evidence in the record at all as to the actual cash value of the property destroyed, and that the court, for that reason, must direct a verdict for the defendant. There was evidence from which the jury might find that plaintiff lost in the fire the articles scheduled in his proofs of loss. He testified that he made out a list of the things that he lost, when he was trying to settle with the company, at which time he could not remember all of the things that were lost, but later made out a complete list for his proofs of loss. This property certainly had some value, and the fact that it might be difficult for the jury, and, in many instances, perhaps impossible, to arrive at its exact cash value, would not authorize the court to direct a verdict for the defendant. As to some items, we are not prepared to say that there was no competent evidence as to value. The comb and brush he testified were worth $2.50, and the bed he paid $10 for, and had only had it three months; that he paid $40 for his black suit and had had it about two years. It is apparent from reading his testimony that he had great difficulty in expressing his own ideas and in comprehending the scope of the questions asked, but, under any possible view of the testimony, he was entitled to a verdict for some damages.

It is next insisted that plaintiff's case could not be maintained because of false swearing. This point was raised by requests to charge Nos. 5, 8, and 9. The fifth and eighth requests to charge required the court to instruct the jury that plaintiff had been guilty of false swearing, and their verdict must be for the defendant. They were properly refused. The fact of contradicting statements, or of statements which were untrue, provided they were made in good faith and without intent to defraud, would not authorize the direction of a verdict. *Knop* v. *Insurance Co.*, 107 Mich. 323. The language quoted from this case by counsel for defendant is, so far as the point under consideration is concerned, from the dissenting opinion. The ninth request is to the effect that, if the plaintiff swore to his loss as being much less than he knew it actually was, this would constitute false swearing, within the meaning of the policy. It can hardly be seriously contended that the court would have been justified in giving this request. There certainly could be no intent to defraud in such a situation.

Error is also assigned upon certain portions of the charge as given, viz. :

"The testimony shows, or tends to show, on the part of the plaintiff, that this property was worth $700."

And again:

"And now on the stand he claims it was worth $700 and he gives this value of this property, from the fact that he purchased it — purchased it and knows what he paid."

We think the instructions complained of were erroneous, and that they were likely to be prejudicial, as giving the jury to understand that there was testimony in the case to the effect that the property insured was worth $700 instead of $422 or $472, as valued in the affidavits of loss. It is at least a fair question for the jury on this record whether the plaintiff did not include in this $700 the heirlooms which he said were worth quite a bit, and by which he seems to endeavor to explain the difference between the

$700 valuation and the valuations in the two affidavits. This, we think, is the natural construction of his testimony, and is the construction placed upon it by his counsel in his brief:

" It was the undoubted intent of Zentarski to convey to the jury the idea that his total loss was $700; this amount to include, not only the property covered by the risk, but also certain other properties which he has designated as heirlooms.".

This was not the intent of the circuit judge when he said:

"The testimony shows or tends to show on the part of the plaintiff that this property was worth $700. But that testimony seems to have been contradicted in some way by the owner of the property having made one or two different statements or affidavits before in relation to what this property was really worth. In those instances the property is claimed to have been worth in the neighborhood of $400. And now upon the stand he claims it was worth $700," etc.

These instructions might well be held to be erroneous, without prejudice, if there were any definite testimony in the record that the property, in gross or by items, was worth $400 or over. But there is no such testimony. Plaintiff does not even testify that the valuations of his proofs of loss are correct, and in only a few instances does he give any data from which the jury might estimate the value of the articles burned.

For the errors referred to, the judgment is reversed, and a new trial granted.

McALVAY, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.