### EMERY *v.* AIRTH.

DEFAULT—EQUITY PRACTICE—OPENING DEFAULT.

In order to obtain a decree in chancery permitting a defendant to open his default in omitting to answer the cross-bill of one of the joint defendants, a sworn answer should have been tendered as provided by Chancery Rule 7, and the application must be made within six months after the entry of default.

Appeal from Cheboygan; Shepherd, J.   Submitted January 23, 1914.   (Docket No. 55.)   Decided June 1, 1914.

Bill by Mary Emery against Henry M. Airth and Arthur F. Watson for a decree discharging a certain

180 MICH.—28.

mortgage as paid and satisfied and determining the amount due, if any. Defendant Airth filed a cross-bill for an accounting and the codefendant defaulted. From an order denying a motion to open his default, defendant Watson appeals. Affirmed.

*J. J. Tweddle,* for complainant .Emery.

*William N. Cross* and *Victor D. Sprague,* for defendant Airth.

*I. S. Canfield,* for defendant Watson.

BROOKE, J. On November 24, 1897, complainant gave to defendant Watson her promissory note for $660, secured by a real estate mortgage covering certain lands described in the bill of complaint. On the same day defendant Watson assigned said note and mortgage, together with five other notes and mortgages, to defendant Airth as security for his note of $1,100, given to Airth. Complainant between the years 1898 and 1908 made certain payments upon principal and interest to defendant Watson, some of which were turned over to Airth by Watson. On November 8, 1911, complainant tendered to defendant Airth $145, which she claimed to be the balance due from her and demanded a discharge of the mortgage. This being refused, she filed her bill of complaint, alleging the payment to Watson of the several sums of principal and interest, alleging her ignorance of the assignment from Watson to Airth and averring that Watson was the agent of Airth. To this bill defendant Watson filed an answer admitting all the material averments, except as to the amounts paid. As to those he left complainant to her proof.

Defendant Airth filed an answer and cross-bill. He admitted the making and assignment of the mortgage as alleged, but denied that Watson was his agent to collect the moneys payable thereunder, and denied that

complainant had made any payments upon principal
or interest to said Watson as his agent, and claimed
that there was then due him upon said mortgage the
sum of $629.85; this sum being the balance due him
from Watson on the $1,100 note. He prayed for an ac-
counting as between himself, complainant, and de-
fendant Watson, and for a sale of the mortgaged
premises to satisfy any sum found to be due from
complainant. Upon this cross-bill a subpœna was
issued and duly served upon defendant Watson. Wat-
son not having appeared, an order *pro confesso* was
duly entered against him by the solicitor for cross-
complainant Airth on June 5, 1912. On July 3, 1912,
the case came on to be heard. The complainant and
her counsel were present. Defendant Watson was
represented by his counsel, Mr. I. S. Canfield, and de-
fendant Airth by his counsel, Mr. William N. Cross.
Testimony was taken in open court, and it was deter-
mined that defendant Watson was indebted to de-
fendant Airth in the sum of $644.21, and that of this
sum complainant should pay the sum of $272; that
being the amount found to be due from her upon her
note and mortgage. A decree was noticed for settle-
ment on July 15, 1912. That decree provided that
complainants should pay the sum of $272 to defendant
Airth, and in default thereof her mortgage should be
foreclosed, and further that defendant Watson should
pay to Airth, as cross-complainant, the further sum
of $372.21 with costs. On the same day (July 15,
1912) defendant Watson filed objections to the entry
of any decree against him. It is necessary to notice
the third objection only:

"Because said defendant Watson has not been
brought before the court as a party defendant to said
cross-bill."

The other objections are all such as should have
been urged by way of demurrer or answer to the cross-

bill. As to the third objection, the record conclusively shows that personal service of the subpœna issued on the cross-bill was made upon defendant Watson on February 20, 1912. The proposed decree was not finally signed until January 25, 1913. In the meantime, defendant Watson had filed an answer to the cross-bill and by his counsel now claims to have secured an oral order from the court that his default should be set aside and a hearing had upon the issues raised by his answer. On January 18, 1913, complainant Emery filed a petition in the cause asking leave to pay into court the sum of $272, and have her mortgage discharged. This petition came on for hearing on January 24, 1913, and the decree was signed the following day. On April 29th, defendant Watson filed a petition asking leave to be heard touching the issues raised by his answer to the cross-bill, voluminous affidavits and counter affidavits were filed, and the matter came on to be heard on July 7, 1913. The learned circuit judge made the following finding and order:

"In this matter it is made to appear before the court that a claim for appeal from a decree heretofore, on the 3d day of July, 1913, granted herein, was made by the said Arthur F. Watson on the 17th day of April, 1913, and a case proposed and amendments proposed to the case was this day brought on for consideration of the court, and there was also brought on for consideration before the court a petition dated April 29, 1913, in which it appears that 'the petitioner therefore appears in this honorable court and asks to be heard touching the matters of said decree and herein refers to his answer to the said bill of complaint now on file in said cause, and asks that he may be permitted to file the same, or such other answer as he may deem best in said case, and that upon the hearing said court will order that said decree be set aside, altered, or amended as to court may seem just, and that the court will grant the petitioner such other relief in the premises as to equity shall appertain,' and

said petition coming on to be heard on notice, I. S.
Canfield appeared for the defendant Arthur F. Wat-
son, William N. Cross and Victor D. Sprague appeared
for Henry M. Airth, and Mrs. Mary Emery was not
personally represented, a full hearing was had upon
the petition, an examination of the records and files
made the answer of Mary Emery and Henry M. Airth
to said petition of Arthur .F. Watson, and the affi-
davits in support of said answer were all presented
to the court, and after hearing counsel, and the court
being fully informed in the premises, and after full
hearing, the court doth find, order, adjudge, and de-
cree as follows:

"(1) That the said Arthur F. Watson was duly and
regularly served with subpœnas to answer the cross-
bill, and his default for not appearing, answering, or
demurring thereto was regularly taken.

"(2) That the defaults of said Arthur F. Watson
were not set aside by oral order or other order of the
court as alleged in paragraph 4 of said Arthur F. Wat-
son's petition.

"(3) That a full hearing and trial of said case was
had on July 3, 1912, and testimony taken, and that
said Watson was represented by his counsel, I. S. Can-
field, during a portion of said hearing had on the fore-
noon of said day, and he absented himself on the af-
ternoon of said day without asking or obtaining per-
mission of the court.

"(4) That on said July 3, 1912, after such full
hearing, and argument of counsel, a decree was
granted, and the terms thereof fully determined by
the court, and that the decree finally entered is in ac-
cordance with the terms as then provided by the court.

"(5) That on July 13, 1912, a form of decree was
presented to the court, after due notice given to
Arthur F. Watson, and the other parties interested,
and that there was present and represented at that
time Mr. Cross, as solicitor for said Airth, and Mr.
Canfield, as solicitor for said Watson, and that said
Watson, through his solicitor, filed some objections
and exceptions to the entering of a decree, largely
based upon an affidavit in which it was claimed that
the defaults of said Watson were irregular and illegal,
and that no process had been issued against him un-
der the cross-bill, and no service of said cross-bill had,

which allegations as to nonservice of process and no service, this court thereafter found, and now finds to be untrue in fact, and that a subpœna was regularly issued against said Watson under said cross-bill and regularly served upon him, and his default thereafter regularly taken, and that all this occurred prior to the hearing and decree on July 3, 1912, the former decree, being taken under advisement by the court, was finally settled and signed as proposed by the court, and the same duly filed by complainant on January 25, 1913.

"(6) That since the decree was made and before the petition herein was filed, the status of the parties had changed, it appearing that under the terms of said decree Mrs. Emery had paid into court her money and had discharged the mortgage in question.

"(7) That on April 23, 1913, before the filing of the petition herein, the decree and all proceedings hereunder were enrolled.

"(8) That the decree heretofore made herein is in accordance with the justice of the case, and was duly and regularly settled according to law, and is hereby confirmed in every particular, and the petition dated April 29, 1913, of said Arthur F. Watson, is hereby dismissed as insufficient in law and fact to warrant the setting aside of said decree."

The decree so far as it affects complainant Emery appears to have received the assent of defendant Watson in open court. As between himself and defendant Airth he has no right to complain. He was personally served with process under the cross-bill and neglected to enter his appearance. He was in court by his solicitor when the cause came on to be heard, and his counsel seems to have participated for a time in the hearing when he absented himself, before the differences between himself and Airth were considered. There are two reasons why his default, duly entered, should not have been set aside: *First.* He did not tender a sworn answer as required by Chancery Rule 7. *Hews* v. *Hews,* 145 Mich. 247 (108 N. W. 694). *Second.* His application was not made within six months after the entry of his default. *St. Louis*

*Hoop & Stave Co.* v. *Wayne Circuit Judge,* 155 Mich. 311 (118 N. W. 989), and cases cited.

The decree is affirmed, with costs.

McALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.

---

FUHRMAN *v.* SUN INSURANCE OFFICE OF LONDON.

1. INSURANCE—INSURABLE INTEREST—SALE OF INSURED PROPERTY.

Evidence that plaintiff, suing to recover insurance on certain lumber, had sold the property but had not been paid in full and that he claimed that the scale as estimated by the buyer was deficient and fraudulent, that he stated the facts to the insurance agent of the defendant who made a personal examination of the lumber and his estimate confirmed plaintiff's claim as to the incorrectness of the vendee's scale, *held,* to support the contention that plaintiff owned an insurable interest, at least in such part of the lumber as had not been scaled or paid for, although the contract of sale provided that title should pass to the buyer upon inspection or payment of any part of the price.

2. SAME—FRAUD—CONCEALMENT.

It was not necessary to show that plaintiff stated the exact amount which he had been paid on the deal, unless information was asked for by the agent upon that subject.

3. SAME—PAYMENT—EFFECT ON INTEREST OF INSURER.

Receipt of a portion of the purchase price by the insured after the issuance of his policy did not avoid the policy or effect any change in the title of the property which remained in the possession of the plaintiff.

4. SAME—FRAUDULENT PROOF OF LOSS.

Where the insured had stated the facts concerning the sale to the agent of defendant who was present when its adjuster investigated the loss, to whom the plaintiff men-

tioned only one of the buyers who had contracted to take
his lumber, and the plaintiff signed a sworn statement
regarding his loss, but claimed to have overlooked the
omission, there was no injury to the insurer shown which
would avoid the policy for fraud.

5. SAME—FRAUD—PROOFS OF LOSS.
   Also where the plaintiff claimed that he did not know any-
   thing about a false statement contained in a schedule
   attached to the proofs of loss and denied swearing to it,
   there was not such a fraudulent statement as would avoid
   the policy.

Error to Presque Isle; Emerick, J.   Submitted Jan-
uary 21, 1914.   (Docket No. 106.)   Decided June 1,
1914.   .

Assumpsit · by Gustave H. Fuhrman against the
Sun Insurance Office of London upon a policy of fire
insurance.   Judgment for plaintiff . and defendant
brings error.   Affirmed.

*Joseph H. Cobb (Bates, Harding, Edgerton & Bates,*
of counsel), for appellant.

*I. S. Canfield,* for appellee.

On the 10th day of December, 1909, plaintiff, who
was the proprietor of a small sawmill, entered into a  ·
written contract with the Michigan Manufacturing &
Lumber Company, by the terms of which he agreed
to sell all hemlock lumber and  cedar that he would
have during the following winter at a certain price
per foot for the several grades and classes.

"Lumber to be delivered at La Rocque as directed
by the second party.   Cedar to be delivered at La
Rocque as directed by the second party.   Delivery to
be made before March 15, 1910."

"All inspection to be done by A. J. Fortier or some
other competent inspector  to  be  furnished by said
second party. ·

"The title to all material passes absolutely to the
purchaser upon inspection of same, or upon any
money being advanced on same."

It was the plaintiff's claim that, attached to this written contract, was a paper writing containing specifications for the sawing of the lumber, and also a provision that, in case plaintiff was not satisfied with the inspection, he could have the lumber reinspected.

About the same time the plaintiff entered into an oral contract with one Reuben Mitchell, by the terms of which he agreed to sell to said Mitchell the hardwood lumber which he expected to manufacture during the following winter. Under these two contracts the plaintiff proceeded to manufacture certain lumber. This lumber he delivered as required by both contracts at La Rocque, where it was piled. Various advances were made to him from time to time by A. J. Fortier, representing the Michigan Manufacturing & Lumber Company and by Reuben Mitchell on account of the contracts. On March 15, 1910, a meeting was had between the plaintiff, Mr. Fortier, and Mr. Mitchell at Millersburg, where the account was gone over, and it was claimed by Fortier and Mitchell that a settlement was arrived at in the course of which the balances due to the plaintiff were determined and checks were given marked "in payment in full for lumber," which checks were afterwards cashed by the plaintiff. Plaintiff denies that this settlement was in full of his demands, and claims that the scale of the lumber in question was fraudulent. He notified both Mr. Fortier and Mr. Mitchell not to move said lumber until a rescale could be made. This being the situation on May 21, 1910, plaintiff applied to the defendant's agent, William Schmidt, for a policy of insurance upon said lumber. He claims to have disclosed to the agent Schmidt the exact condition of the title, that the scale given him by the scaler employed by Fortier and Mitchell was fraudulent and much too low, and that upon a proper scale his interest in the

lumber then piled at La Rocque would amount to some $800 or $900. Whereupon, on May 21, 1910, the defendant caused to be issued to the plaintiff a policy of insurance in the sum of $600, covering said lumber, for which plaintiff paid a premium of $7.50. The policy was to run for four months. On June 14, 1910, the lumber was in whole or in part destroyed by fire. Plaintiff at once notified the agent of the defendant company, and a Mr. Spear, of Bay City, went to Mr. Fuhrman's farm north of La Rocque in company with Mr. Schmidt, the local agent, where the loss was adjusted at the sum of $520. The proofs of loss, which were in part prepared in Bay City, and in part at the plaintiff's farm, stated:

"The property described in said policy belonged, at the time of the fire herein mentioned, to Gustav H. Fuhrmann, and no other person or persons had any interest therein, except as follows: Agreed to be sold to Reuben Mitchell of Millersburg—no other interest."

It is the claim of the plaintiff that at this time he fully disclosed to Mr. Spear the fact that Mr. Fortier's company likewise had an interest in the lumber, and that he did not notice the omission of the name of the Michigan Manufacturing & Lumber Company in the description of the property. Upon receipt of the proof of loss the defendant company sent to the agent Schmidt a draft for $520 in payment of the loss, which Mr. Schmidt delivered to plaintiff, taking a receipt and a surrender of the policy therefor. This check was delivered by Schmidt to the plaintiff on June 29, 1910, and he thereupon wrote the following letter to the defendant company:

"SUN INSURANCE OFFICE OF LONDON,
        "Chicago, Ill.
"*Gentlemen:*
"I herewith inclose you draft, duly indorsed, also receipts duly signed. As I cannot get the draft cash-

ed here, you would oblige me if you would send me the currency by registered mail.

"Thanking you for your promptness in the matter, I am, respectfully yours,

"GUSTAV H. FUHRMANN."

This letter was received by the defendant company on June 29, 1910. On June 30, 1910, Reuben Mitchell sent a telegram to the company as follows:

"Defer payment of loss on lumber at La Rocque to Fuhrmann until investigated. . See letter."

On the same day Mitchell wrote a letter to the defendant, to which the name of G. Covey, Jr., was signed by typewriter, as follows:

"MILLERSBURG, MICHIGAN, June 30, 1910.
"[On the letter head of Mr. Mitchell.]
"THE SUN INSURANCE CO.,
      "Chicago, Ill.
*"Dear Sirs:*
"I understand your company had a recent fire on lumber at La Rocque station, Hawks post office, Presque Isle county, Michigan, on policy issued to August Fuhrmann, which loss has been adjusted and, I am told, paid. This lumber belonged to R. Mitchell, of Millersburg, Mich., and the circumstances connected with this indicate incendiarism and point suspicion towards Fuhrmann. Kindly do me the favor to furnish me with full details as to when the insurance was effected, by whom, its amount, and the proof of loss which were furnished to your company. As the matter stands, it now looks as if a crime had been committed, as well as a civil wrong, and I trust I may have your assistance in investigating this matter and punishing the criminal, if we can secure the evidence to do it.

"Very respectfully yours,
            "G. COVEY, JR.,
      "Prosecuting Attorney."

This letter seems to have been dictated by Covey, but actually written by Mitchell.

And on September 10, 1910, the following letter was written signed by Mitchell himself:

"Sun Insurance Co.,
      "Lansing, Mich.
*"Dear Sirs:*
   "Your letter of August 18 received during my absence from home; hence this delay in answering. The matter of Fuhrmann has been placed in the hands of the prosecuting attorney, and we are awaiting developments. It matters not what Fuhrmann claims due him on the lumber. He has received every dollar for this lumber and cedar, according to contract prices, he is entitled to. If he has anything due on lumber, why don't he get to work and collect it from the people who he claims to owe him? They are all good.
   "At the time of the fire there was not a foot of lumber anywhere around which belonged to any one beside myself and the Michigan Mfg. & Lumber Co. In regards to my oral agreement with Fuhrmann, I was to have the hardwood lumber at a price agreed upon, the inspector was agreed upon to do the inspection, and I was to pay him for his stock as fast as it was delivered at La Rocque, inspected, and in piles. This I did. I expect arrest will follow soon.
                            "Yours truly,
                                 "R. Mitchell."

The earlier of these communications having been received by the defendant about the time the indorsed draft for $520 reached its hands, it declined to return to plaintiff the money represented by said draft. On May 28, 1912, plaintiff brought suit against the defendant in assumpsit for the proceeds of said draft. The defendant defended the suit upon several grounds. Defendant claimed, *first,* that the policy was void because plaintiff had no insurable interest in the lumber; *second,* that, the description of the property and title thereto being false in fact, the policy was void; *third,* that the plaintiff was responsible for the origin of said fire; and, *fourth,* that the plaintiff's suit could not be maintained because of a provision of the policy, "that no suit or action on this policy for the recovery of any claim shall be sustain-

able in any court of law or equity, unless commenced within twelve months next after the fire." Under these pleadings the parties went to trial, and plaintiff recovered a judgment for the amount of the draft, with interest. Defendant reviews the case in this court by writ of error.

BROOKE, J. *(after stating the facts).* Defendant first claims that the plaintiff should not be permitted to recover because, at the time the policy was written, he had no insurable interest in the lumber, for the reason he had been paid in full and accepted his money.

As nearly as we are able to determine from a careful examination of the record, it seems to have been the claim of Fortier, representing the Michigan Manufacturing & Lumber Company, that the plaintiff had been paid in full according to the scale sheets of McComb, the scaler employed by Fortier. The total amount of hemlock settled for according to said sheets was 36,523 feet. Mitchell claims to have paid according to the scale sheets for 26,551 feet. The plaintiff produced his scale book made at the time the lumber was cut, from which it appears that there was hardwood to the amount of 56,417 feet, and hemlock to the amount of 70,144 feet. The insurance agent before writing the policy in question made a personal examination of the lumber, counted the piles and the tiers in each pile, and estimated the amount at about 100,000 feet. It is apparent that, if the agent Schmidt's estimate was correct, there was at that time in the piles nearly 40,000 feet for which the plaintiff had not been paid. The record discloses that the plaintiff refused to accept the scale given him by Fortier and Mitchell, and had forbidden the removal of the lumber until a new scale could be made. Under these circumstances we are of opinion that the title to the lumber, or at least such portion of it as had

not been scaled or paid for, remained in plaintiff.

Plaintiff's application for insurance was verbal; but Mr. Schmidt, the agent, testifies that he was told by plaintiff that the lumber was contracted to be sold to Mitchell and Fortier. Plaintiff does not claim to have disclosed to the agent the exact amount which had been paid him thereon. This, however, we think is unnecessary; the agent not having requested such information. *Guest* v. *Insurance Co.*, 66 Mich. 98 (33 N. W. 31); *Gristock* v. *Insurance Co.*, 87 Mich. 428 (49 N. W. 634); *Hoose* v. *Insurance Co.*, 84 Mich. 309 (47 N. W. 587, 11 L. R. A. 340); *Brunswick-Balke-Collender Co.* v. *Northern Assurance Co.*, 142 Mich. 29 (105 N. W. 76).

Upon this question, the court charged the jury as follows:

"Now, gentlemen of the jury, that is a question of fact what he informed Mr. Schmidt. That is for you to determine what he really did say to Mr. Schmidt. You have heard Mr. Schmidt's testimony, and you have heard his testimony. But I tell you, gentlemen, that unless at that very time he fairly and fully apprised Mr. Schmidt of what his real interest there was, that he could not recover in this case at all.

"But I also charge you, gentlemen of the jury, that if he at that time fully and fairly stated to Mr. Schmidt the truth—the truth—that he had an interest there in that lumber, that he had not been paid fully for the lumber, that he had an interest there of several hundred dollars, more than he had been paid, that he could recover in this case."

It is next urged that plaintiff cannot recover because the interest, title, and possession of the lumber changed after the policy was written and before the fire. This claim is based upon the fact that plaintiff received two small checks from Mr. Fortier and Mr. Mitchell shortly after the policy was issued. In view of the circumstances under which this policy was issued, and the contracts for the sale of the lumber covered by it which were known to defendant through

its agent, we are of opinion that the receipt of these sums cannot be held to vitiate the policy. In other words, that it did not effect a change in the interest, title, or possession of the subject of insurance.

Defendant next urges that plaintiff cannot recover because he misrepresented the material facts and circumstances concerning the insurance, the subject thereof, after the fire, and in his proofs of loss. This claim is based upon the fact that Fortier's name was not mentioned as one of the vendees of the lumber in question. It is the claim of the plaintiff that he told the adjuster that Fortier, as well as Mitchell, was interested in the lumber, and it is admitted by the agent Schmidt that such information was imparted to him at the time the policy was written. As Schmidt was present with the adjuster at the time the loss was adjusted, it cannot be said that the insurance company was in any wise injured by the failure to include Fortier's name as a vendee in the description of the title. The paper itself was prepared by the defendant's agent. It was read to and signed by the plaintiff, who swears that he did not notice the omission of Fortier's name. *Knop* v. *Insurance Co.*, 101 Mich. 359 (59 N. W. 653); *Brunswick-Balke-Collender Co.* v. *Northern Assurance Co., supra.*

This was made out from information which the adjuster Spear testifies he secured from the plaintiff. It is signed by the adjuster, and not by the plaintiff. It is contended by defendant that the record clearly shows that the last item therein, "less purchaser's interest per advance payment made, $80.00," is clearly false, as the record conclusively shows that a much larger sum had been paid plaintiff. Plaintiff denies all knowledge of this entry. Even where the false statement has been sworn to, it has been held not to void the policy in certain instances. *Tiefenthal* v. *Insurance Co.*, 53 Mich. 306 (19 N. W. 9); *Knop* v. *Insurance, supra; Walker* v. *Underwriters' Ass'n*, 142 Mich. 162 (105 N. W. 597).