HAKES *v.* KENT CIRCUIT JUDGE.

DEFAULT—COURT RULES—SETTING ASIDE DEFAULT—LIMITATION.
  Under Circuit Court Rule No. 32, § 4, where more than six months had elapsed after defendant's default in a suit for divorce had been regularly entered, and decree granted to plaintiff, the court was without jurisdiction, on defendant's petition, to set aside said default; the provisions of said rule being mandatory.

Mandamus by Frank Hakes to compel William B. Brown, circuit judge of Kent county, to vacate an order setting aside a default. Submitted January 18, 1921. (Calendar No. 28,954.) Writ granted March 30, 1921.

*John J. McKenna* and *R. M. Shivel,* for plaintiff.

*Jewell & Smith,* for defendant.

STEERE, C. J.   Plaintiff seeks by mandamus to compel vacation of an order setting aside a default of the defendant and a decree for plaintiff in a divorce case entitled Frank Hakes *v.* Letha Hakes, granted and recorded in the Kent county circuit court, in chancery, on December 12, 1917. It appears that the parties to said suit were married April 6, 1906. Two children were born of the marriage, a son on February 3, 1907, and a daughter on May 12, 1909. The parties disagreed and ceased living together as husband and wife prior to September 6, 1917, and on that date a written agreement was entered into between them settling their property rights, including alimony, and custody of children. The terms of this agreement were discussed, settled upon and reduced to writing in the office of plaintiff's counsel. At that time a brother-in-law of defendant and an attorney whom he had procured in her behalf were present to look after her interests. Before the parties signed the agreement it was read over to defendant and her brother-in-law and pronounced by them satisfactory, her brother-in-law signing it as one of the subscribing witnesses.

The contract, after proper introductory recitals, provides that the father, Frank Hakes, shall have the maintenance, custody, care and education of their two minor children until they respectively arrive at the age of 18 years, reserving to the mother, Letha Hakes, the right to visit them at any time and place wherever they may be during reasonable hours; that each party may have said children half the time during school vacations; gives defendant possession and title to all furniture located in their home, but provides that when the daughter is of sufficient age and wishes to take music lessons the family piano shall be at her

service for that purpose; requires plaintiff to give defendant $500 in cash, specifying times of payment, releases him from further property claims which she might otherwise have as his wife, etc., concluding as follows:

"It is further agreed between said parties that in case a bill of divorce is filed by either of the parties hereto and a decree for divorce shall be granted to either of them, then this agreement may be treated as reasonable and equitable settlement of their party rights and the custody of their children and that the substance of the same may be embodied in the said decree for divorce and become a part thereof."

On September 6, 1917, after this agreement was executed, plaintiff filed a bill for divorce in the Kent county circuit court, in chancery, against said Letha Hakes, charging extreme and repeated cruelty to himself and their children at various times, covering a period from shortly after their marriage until their separation. Chancery process was duly issued in said suit, personal service had and proof thereof filed on September 27, 1917. Defendant, though living near by, did not appear. Affidavit of her nonappearance and of regularity were duly filed and her default by order *pro confesso* and of reference was duly entered.

On November 12, 1917, more than 60 days after filing the bill of complaint, the case was brought on for hearing. Testimony was taken in behalf of plaintiff in open court, given by himself and the wife of defendant's brother. On December 12, 1917, a decree for absolute divorce was granted to plaintiff Frank Hakes against said defendant Letha Hakes. The provisions of their property agreement were set out in substance in the decree, which plaintiff thereafter fully and faithfully observed and performed all its conditions and requirements on his part, both as to the property and children. No question is raised but that defendant received the money and property awarded to her. The

children were kept and properly cared for in a religious school at plaintiff's expense, and the provisions relative to the mother seeing and having them with her were observed.

On December 2, 1918, said Letha Hakes filed a petition in the circuit court of Kent county, in chancery, praying that the decree be modified with reference to custody of the minor children. Plaintiff appeared by counsel and answered. The matter, though at one time set for hearing on August 11, 1919, does not seem to have been pressed. It is not shown to have ever been submitted or any disposition made of it.

On July 30, 1919, over a year and a half after the decree, said Letha Hakes by the same counsel filed a sworn petition in said suit asking that her default for nonappearance be set aside, the decree for divorce vacated and she be permitted to file an answer in the nature of a cross-bill to the bill of complaint filed therein. Plaintiff answered this petition on August 11, 1919. This matter was brought on to be heard before the judge who had granted the decree, both parties being present and represented by counsel. Voluminous affidavits and counter affidavits were filed and the court permitted both parties to amend their pleadings. The files and records of the probate court of Kent county relating to commitment of said Letha Hakes to the Kalamazoo State hospital for treatment were admitted in evidence, and also the records of the probate court relative to her restoration to sound mind. The matter was thereafter argued and on August 13, 1919, the court made the order complained of, setting aside the default of said Letha Hakes in the divorce case and vacating the decree.

The grounds stated in the order are:

"fraud practiced on said court in the concealment of the material facts and circumstances by the witnesses in behalf of said plaintiff and by the bill of complaint of said plaintiff and that the nonappearance and de-

fault of said defendant and the order *pro confesso* were entered and obtained by reason of the fraud practiced on said defendant"—

The return to the order to show cause is an elaboration and argument of those reasons accompanied by 66 exhibits, consisting of copies of pleadings and other records of court proceedings, some papers with lists of subscribers, as to a petition, entitled "statements of citizens," of Lowell where the parties formerly lived, certifying respectively to the good standing and high moral character of each, and 44 affidavits bearing, or claimed to bear, on the contentions of the respective parties.

Plaintiff's counsel contend that the order setting aside the default and vacating the decree is without authority of law and void for the following reasons:

"(1) The application to set aside was not made within six months after the default of said Letha Hakes was regularly entered as provided by section 4 of Circuit Court Rule No. 32, and that she was guilty of such laches and delay as precluded her from obtaining this relief.

"(2) No fraud was alleged or proven and there was no evidence of fraud to sustain and warrant the order of the circuit judge in setting aside the default and the decree and his findings of fraud in this order and in his answer and return are without foundation and his action amounts to an abuse of discretion on his part."

Petitioner's claimed charges of fraud consist chiefly of denial of the misconduct alleged and *prima facie* proven by plaintiff as ground for his divorce, of counter charges of misconduct against him, of ignorance at that time as to her own rights, and of false representations, threats and intimidation by him impelling her to enter into the contract of settlement and refrain from contesting his divorce case. All this was answered by full denial under oath, supported by counter affidavits fully covering every question raised,

which necessitated for a favorable determination of her contention a finding that plaintiff's counter showing was false in fact and she had sustained the burden of proof under the well-settled rule that all presumptions are against fraud, which must be proven clearly and conclusively to prevail, an issue which we do not find it necessary to try out on affidavits at this stage of the proceeding.

We gather from the return that the found fraud upon the court is largely based on the view that at the hearing on default plaintiff concealed from the court the odor of collusion in the contract of settlement with his wife indicating a divorce was imminent. Of such a contract based upon "prior negotiations" the court pointedly said that:

"Such an agreement would be an assurance of non-contest, which is illegal and a decree secured as a result of an agreement, even though 'made voluntarily' is a fraud on the court and void."

Upon that hearing the court was advised both in plaintiff's testimony and by statement of his counsel that there was an agreement in writing as to the children and property. The record of the hearing does not disclose that it was offered in evidence, or before the court, beyond the inference arising from the fact that 7 of the 10 paragraphs of the decree then granted and signed by the court follow the contract in substance with detailed provisions as to various matters of which there was no other evidence before the court.

It is shown plaintiff's wife was committed by the probate court to Kalamazoo hospital for the insane on December 30, 1914, where she remained about two months, and was on June 30, 1916, adjudged by the same court fully restored, sane and mentally sound. That plaintiff did not on the hearing of his divorce case disclose that his wife had been adjudged insane and the facts relative to her mental condition is also

mentioned in the return as fraud upon the court. There is no proof or claim by or for her that she was of unsound mind when she made the alleged collusive contract with her husband, nor for a couple of years before, or since. Her claim is ignorance of her rights, deception and intimidation of her by her husband. Before December 2, 1918, she had engaged counsel through whom she had available knowledge of the nature of the divorce proceedings, the decree against her and presumably was advised of her rights. She then filed a petition recognizing the decree and praying that it be modified only as to the care and custody of the minor children, a feature of the case in which the court held continuing jurisdiction and power to act on proper showing. Some eight months later this petition was filed continuing her charged laches that much longer after full knowledge.

If abuse of discretion which plaintiff's counsel so strenuously urged was the only test, we might hesitate to interfere under the broad discretionary control given equity courts over their decrees before enrollment; but the mandatory limitations of time in which they may act after a defendant personally served has ignored the summons and been defaulted is squarely stated in section 4 of Circuit Court Rule No. 32 as follows:

"In all cases where personal service shall have been made upon a defendant, and proceedings taken after default on the strength thereof, his default shall not be set aside unless the application shall be made within six months after such default is regularly filed."

This court has construed said rule, as well as former Rule No. 12 of like import, many times and held that where personal service was had with all proceedings regular up to the time of a default regularly entered and proceedings were taken after default on the strength thereof, such default could not be set

aside unless the application was made within six months after the default was filed and entered. *Petley* v. *Wayne Circuit Judge,* 124 Mich. 14; *Carpenter* v. *Judge of Superior Court,* 126 Mich. 8; *Biensteadt* v. *Clinton Circuit Judge,* 148 Mich. 633; *Caille Bros. Co.* v. *Saginaw Circuit Judge,* 155 Mich. 480; *St. Louis Hoop & Stave Co.* v. *Wayne Circuit Judge,* 155 Mich. 311; *Steele* v. *Bliss,* 170 Mich. 175; *Burgard* v. *Burgard,* 175 Mich. 565; *Emery* v. *Airth,* 180 Mich. 433; *Hekkema* v. *Kalamazoo Circuit Judge,* 184 Mich. 646; *Cook* v. *Wayne Circuit Judge,* 197 Mich. 19; *Detroit Taxicab & Transfer Co.* v. *Wayne Circuit Judge,* 203 Mich. 105; *Kentucky Wagon Manfg. Co.* v. *Kalamazoo Circuit Judge,* 208 Mich. 267.

The provisions of the rule are mandatory, applying alike to law and equity proceedings. The substance of repeated rulings of this court upon that limitation is well condensed in *Cook* v. *Wayne Circuit Judge, supra,* a chancery suit in which default after personal service had been entered and decree granted more than six months before application to set the same aside, as follows:

"The object of this rule was to fix the time within which a default might be set aside and it has been repeatedly held that an order setting aside a default after the expiration of six months from its entry was void, and mandamus has issued to compel the vacation of such orders." Citing cases.

The trial court was without jurisdiction to make the order complained of.

Writ will issue requiring vacation of the same as prayed, with costs to plaintiff.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. The late Justice BROOKE did not sit.