WAYNE CREAMERY v. SUYAK.

1. PLEADING—DEFAULT JUDGMENT—DISCREPANCY BETWEEN COMPLAINT AND JUDGMENT—BANKRUPTCY.

Discrepancy between complaint's allegations and default judgment's findings, where judgment recited conversion of money and a wilful and reckless misuse of a truck, while complaint contained no such allegation, *held*, of sufficient importance on the practical issue between the parties—dischargeability in bankruptcy of indebtedness—to merit not allowing judgment to stand as originally entered, since the defendant was not apprised by the complaint of the nature of the claim which the judgment found had been established.

2. SAME—COMPLAINTS—PURPOSE.

The purpose of a complaint is to apprise the defendant of the issues he will be required to meet and the relief sought (GCR 1963, 111.1).

3. SAME—SPECIFICITY—NOTICE.

Court rule requires the pleader to state the facts with such specific averments as are necessary reasonably to inform the adverse party of the cause he is called upon to defend (GCR 1963, 111.1).

REFERENCES FOR POINTS IN HEADNOTES

[1, 8]  30A Am Jur, Judgments § 213.
[2]  41 Am Jur, Pleading §§ 73, 74, 77.
[3]  41 Am Jur, Pleading § 79.
[4]  30A Am Jur, Judgments §§ 198, 213.
[5, 9]  41 Am Jur, Pleading § 297.
[6]  9 Am Jur 2d, Bankruptcy § 753.
[7]  20 Am Jur 2d, Courts §§ 56, 58, 60.
[10]  30A Am Jur, Judgments §§ 198, 213; 41 Am Jur, Pleading § 297.

4. SAME—COMPLAINTS—DEFAULT JUDGMENT.

The complaint as served upon defendant must have stated facts supporting a default judgment to the extent required by court rule, where plaintiff desires trial court to make findings in a default judgment affecting the dischargeability of the judgment in bankruptcy (11 USC § 25; GCR 1963, 111.1).

5. SAME—AMENDMENT OF COMPLAINT AFTER JUDGMENT.

Power of amendment of pleading embodied in State statute permits amendment after judgment only as to matters of form, not those of substance, and then only if the amendment is an affirmance of the judgment to correct a variation in the record from that which in fact occurred in the judicial proceedings (PA 1961, No 236, § 2311).

6. SAME—AMENDMENT OF COMPLAINT AFTER JUDGMENT—DISCHARGEABILITY OF JUDGMENTS IN BANKRUPTCY.

Order of trial court reforming and amending default judgment *nunc pro tunc,* entered over plaintiff's protest, *held,* not within the spirit of State statute which protects a holder of a judgment and contemplates only orders of reformation and amendment in affirmance of the judgment, for if the effect of the order is to make the judgment dischargeable in bankruptcy, the order is not in affirmance of the judgment (PA 1961, No 236, § 2311).

7. JUDGMENT—COURTS—CORRECTION OF ORDERS IMPROPERLY ENTERED.

Courts of general jurisdiction balance the policy favoring the correction of error and the policy favoring the finality of judgments when exercising their inherent power to correct orders improperly entered (GCR 1963, 528.3).

8. SAME—PLEADING—DEFAULT JUDGMENT—CORRECTION OF ORDERS IMPROPERLY ENTERED.

Discrepancy between complaint's allegations and default judgment's recitals, where judgment recited a conversion of money and willful and reckless misuse of a truck, while complaint contained no such allegations, *held,* to justify trial court in relieving defendant from the default judgment under court rule (GCR 1963, 528.3).

9. SAME—AMENDMENT OF COMPLAINT AFTER DEFAULT JUDGMENT.

Refusal of trial court to allow plaintiff to amend its complaint, after defendant's motion was granted to reform and amend default judgment *nunc pro tunc* based upon a discrepancy between complaint's allegations and default judgment's recitals,

*held,* error, since such refusal gave to defendant more than he would have received had his original motion to set aside default judgment been granted (GCR 1963, 528.3).

10. SAME—AMENDMENT OF COMPLAINT AFTER DEFAULT JUDGMENT.

A default judgment, containing recitals of fact affecting the dischargeability in bankruptcy of a judgment debt, entered on the basis of a complaint not alleging the facts on which plaintiff relied with specific averments required by court rule which were necessary reasonably to inform the defendant of the nature of the cause he was called to defend, should be set aside by the trial court upon motion for relief from judgment, and plaintiff should be granted leave to amend his complaint and the defendant leave to answer the amended complaint (GCR 1963, 111.1, 118.1).

Appeal from Wayne; Brennan (Thomas E.), J. Submitted Division 1 February 10, 1967, at Detroit. (Docket No. 2,186.)   Decided March 22, 1968.

Complaint by Wayne Creamery, a Michigan co-partnership, against Andrew Suyak for breach of contract. Default judgment for plaintiff. Judgment reformed and amended by order *nunc pro tunc* on motion of defendant. Plaintiff appeals. Reversed and remanded.

*Leo Papp,* for plaintiff.

*Joseph E. Maher* and *Gregory M. Pillon,* for defendant.

LEVIN, P. J. The trial judge, by an order *nunc pro tunc,* reformed and amended a default judgment entered in favor of plaintiff-appellant Wayne Creamery against defendant-appellee Andrew Suyak to eliminate language in the original default judgment which found Suyak indebted to the Creamery for "conversion" of money and "willful and reckless" misuse of a Creamery-owned truck used by Suyak in working one of Creamery's milk routes. Suyak

was adjudicated a bankrupt between the date on which the default judgment was entered and the date on which the amending *nunc pro tunc* order was entered. The form of the default judgment would be relevant to the question whether the indebtedness evidenced by that default judgment could be discharged in bankruptcy.[1] (See 11 USC § 25 and footnote 8.)

The complaint alleged that Suyak leased a milk route from Creamery and, in connection with that lease, purchased from Creamery accounts receivable and a milk truck; that Suyak executed both a chattel mortgage of the truck and a continuing assignment of accounts receivable to secure payment of all then and future indebtedness of Suyak to Creamery; and that he operated the milk route for a little over a year, at which time he breached the lease for which Creamery claimed damages of $6,627.30.

Following entrance of Suyak's default for failure to answer and after a change in the attorneys representing Creamery, Creamery moved for default judgment. At the hearing on that motion, Creamery's witness testified to the execution and delivery of the lease, the chattel mortgage and the assignment of accounts receivable;[2] he further testified that Suyak collected, but did not turn over to the Creamery, $5,229.59 belonging to Creamery, and that repairs to the truck were required because Suyak failed to maintain the vehicle properly. There were several other debit and credit items, including an item of approximately $740 for damages resulting from the alleged wrongful termina-

---

[1] The record does not indicate whether Suyak ever actually received a discharge in bankruptcy.

[2] The copies of the lease and assignment of accounts receivable attached to the complaint were merely blank forms. However, original, executed copies of the lease, the assignment of accounts receivable and the chattel mortgage were marked as exhibits and admitted into evidence at the hearing on the motion for a default judgment held on November 19, 1965.

tion of the lease. For all these damages, a default judgment in the amount of $5,969.59 was entered on November 19, 1965. The judgment recited that $5,229.59 of Suyak's indebtedness was for conversion of Creamery moneys to his own use, and $328.81 was for willful and reckless misuse of the truck.

Following entry of the default judgment, Creamery pursued various remedies in an effort to collect it. Claiming he was never served with summons or otherwise made aware of the pendency of these proceedings, Suyak, on February 14, 1966, moved to set aside the default judgment, which motion was denied on March 1, 1966. On March 8, 1966, a motion for "reformation and amendment" of the default judgment was filed by Suyak, claiming relief pursuant to RJA § 2311[3] and GCR 1963, 528.3. He was adjudicated a bankrupt on March 30, 1966. The amending order *nunc pro tunc,* from which Creamery now appeals, was entered on April 1, 1966.

## I.

Suyak's motion for reformation and amendment of the default judgment asserted that the just cited statutory provision and court rule applied because the complaint did not allege conversion and did not sound in tort. Thus, Suyak alleged, (1) the complaint failed to make him aware that Creamery was seeking a judgment not dischargeable in bankruptcy, (2) the findings in the original default judgment of conversion and willful and reckless misuse of the truck did not conform to the allegations in the complaint, (3) through mistake or inadvertence, fraud,[4]

---

[3] Revised judicature act, PA 1961, No 236, § 2311 (CLS 1961, § 600.2311 [Stat Ann 1962 Rev § 27A.2311].

[4] While the complaint does not expressly allege conversion, the mere fact that the default judgment, submitted to the judge and signed by him, recites Suyak's conversion of moneys belonging to Creamery to his own use, does not establish fraud on the court or on anyone

misrepresentation, or other misconduct on the part of Creamery the court was led to enter a default judgment in the form in which it was entered, and (4) equity and good conscience required reformation and amendment of the default judgment to conform with Creamery's pleadings.

Creamery answered, contending that the proofs taken during the hearing on Creamery's motion for default judgment substantiated the findings of the court in the default judgment as originally entered.[5] Creamery further contended that, if the court should find that there was a variance between those proofs and Creamery's pleadings, the court should enter an order pursuant to RJA § 2311, amending the complaint to conform with the proofs.

Counsel for both parties, but no witnesses, were heard at the hearing on Suyak's motion to reform and amend the default judgment held on March 25, 1966. After hearing argument, the court stated the default judgment containing findings that Suyak converted to his own use moneys belonging to Creamery should not have been entered upon a complaint alleging only breach of the terms of the lease. Creamery then renewed its request that the court permit an amendment of the complaint pursuant to RJA § 2311. Suyak's counsel stated he had no objection to the court granting Creamery leave to amend its complaint, so long as Suyak was permitted to answer such an amended complaint. Creamery's counsel responded he was willing to stipulate that there should be a trial if Suyak would put up a bond, to which Suyak's counsel responded that, if a bond could be obtained, Suyak would file

else.  We add that in this case there was some testimony which might have been thought to justify a finding of conversion. See main text of this opinion following footnote 2.

[5] Our decision here obviates any consideration of Creamery's claim that the evidence introduced at the hearing supported the finding of conversion set forth in the default judgment as originally entered.

it and the parties could have "a trial on the issues."
The court expressed doubt whether Suyak could
obtain a bond.

The court then announced it would amend the
judgment to conform to the pleadings, eliminating
the reference to conversion.[6]  The court refused to
allow Creamery to amend its complaint.

## II.

Suyak desired that the indebtedness reflected in
the judgment be dischargeable in bankruptcy, and
Creamery desired to avoid the effect of such a dis-
charge.   Suyak desired to reform and amend the
judgment to conform to the pleadings, while Cream-
ery desired to reform and amend the pleadings to
conform to its concept of the proofs.  On this record
we can see no reason, and none has been suggested
by either counsel, why either party's prayer for
reformation and amendment was any more deserv-
ing than the other's.

However, we are satisfied the complaint failed to
state facts apprising Suyak of the nature of the
claim which the default judgment found had been
established, and that the discrepancy between the
complaint's allegations and the default judgment's
findings is of sufficient importance on the practical
issue between the parties—the dischargeability of
the indebtedness—that the trial judge correctly
ruled the default judgment should not have been
permitted to stand as originally entered.

The purpose of a complaint is to apprise the
defendant of the issues he will be required to meet

---

[6] The April 1, 1966 "order reforming and amending default judg-
ment *nunc pro tunc* as of November 19, 1965" states that the court
finds and adjudicates "in accordance with and under the pleadings
of plaintiff in this cause" that Suyak was indebted to Creamery in
the sum of $5,969.59.   The order eliminates the references in the
original default judgment to "conversion" of money and "willful and
reckless" misuse of the Creamery truck.

and the relief sought. GCR 1963, 111.1[7] requires
the pleader to state the facts with such specific
averments as are necessary reasonably to inform the
adverse party of the cause he is called upon to
defend. To a defendant in such precarious finan-
cial straits that voluntary bankruptcy appears to
be a desirable alternative, it is vitally important
whether a judgment sought against him is discharge-
able in bankruptcy.[8] Where a plaintiff desires a
trial judge to make findings in a default judgment
affecting the dischargeability of the judgment in
bankruptcy, the complaint, as served upon the de-
fendant, must have stated facts supporting the
judgment to the extent required by GCR 1963, 111.1.
Compare *Harris* v. *Deitrich* (1874), 29 Mich 366;
*McMahon* v. *Rooney* (1892), 93 Mich 390, 393;
*Colling* v. *McGregor* (1906), 144 Mich 651, 653;
*Foster* v. *Talbot* (1932), 257 Mich 489, 492; *Smak*
v. *Gwozdik* (1940), 293 Mich 185, 192. See also,
7 Callaghan, Michigan Pleading & Practice (2d ed),
§ 44.31.[9]

## III.

While we agree with the trial judge that the
difference between the pleading in the complaint and

[7] "A pleading which sets forth a claim for relief * * * shall
contain * * * a statement of the *facts* without repetition upon
which the pleader relies in stating his cause of action with such specific
averments as are necessary reasonably to inform the adverse party
of the nature of the cause he is called upon to defend." GCR 1963,
111.1. (Emphasis supplied.)

[8] It has been said that in determining whether a judgment is dis-
chargeable the court may pierce the judgment and look at the entire
record in the case in which the judgment was rendered, but not beyond
that record. *Horner* v. *Nerlinger* (1943), 304 Mich 225, 233; *Rice* v.
*Guider* (1936), 275 Mich 14, 17; *McClure* v. *Steele* (1949), 326 Mich
286, 291. Compare 1 Collier on Bankruptcy (14th ed), § 17.09, p
1599, § 17.16[4], p 1642, § 17.17[2], p 1662.

[9] See GCR 1963, 518.3, limiting *default* judgments to the "kind"
and amount prayed for in the demand for judgment, and providing
that all other final judgments shall grant the relief to which the
prevailing party is entitled even if not demanded in his pleadings.

the findings in the default judgment obliged him to set aside the default judgment, we disagree with the form of his order and with his refusal to allow Creamery to amend its complaint.

RJA § 2311 first appeared in its present text[10] as CL 1857, § 4417, and appears to be derived from the revised statutes of 1838.   The 1838 provision reads:

"Sec 21.  *After* the judgment rendered in any civil action, and [any] defects or imperfections in matter of *form,* found in the record or proceedings in the action may be rectified and amended by the court in which the judgment is rendered, or by the court to which it shall be removed by writ of error, if substantial justice requires it, and *if* the amendment is in affirmance of the judgment."   (Emphasis supplied.)   RS 1838, part 3, title 2, ch 8, § 21.

The foregoing language in the 1833 statute was preceded by the following:

"Sec 20.  The court in which any civil action is pending, may at any time *before* judgment rendered therein, allow amendments, either in *form or sub-*

---

10 *"After* judgment rendered in any cause, any defect or imperfections in *matter or* [*of*]* *form,* contained in record, pleadings, process, entries, returns, or other proceedings, may be rectified and amended by the court, *in affirmance of the judgment, so that such judgment shall not be reversed or annulled;* and any variation in the record, from any process, pleading or proceeding had in such cause, shall be reformed and amended according to such original process, pleading or proceeding."   PA 1961, No 236, § 2311 (CLS 1961, § 600.2311, [Stat Ann 1962 Rev § 27A.2311]).   (Emphasis supplied.)

No doubt, the reason why "of" has been inserted by the compilers of Michigan Statutes Annotated is that the text of RJA § 2311 follows word-for-word that of CL 1948, § 616.3 and CL 1857, § 4417 from which RJA § 2311 was derived, except that "defect" read "defects" and there was a comma after "imperfections" in the 1857 version and except for the substitution of the word "or" in RJA § 2311 for the word "of" in those earlier provisions, apparently leading the compilers to believe that the substitution of "or" for "of" was itself a defect or imperfection requiring reformation and amendment.

* This insertion of bracketed matter appears only in Statutes annotated, not in PA 1961, No 236, § 2311.—REPORTER.

*stance,* of any process, pleading or proceeding in such action, on such terms as shall be just and reasonable." (Emphasis supplied.) RS 1838, part 3, title 2, ch 8, § 20.

We note that under the 1838 statute, while the power of amendment before judgment related either to "form or substance", the court could correct only a "matter of form" after judgment. The theme of RJA § 2311 is precisely the same as section 21 of the 1838 statute. Therefore, we conclude from both the history of RJA § 2311 and the ordinary meaning of its language that the power of amendment embodied in RJA § 2311 permits amendment *after* judgment only as to "matters of form", not those of substance, and then only if the amendment is "in *affirmance* of the judgment"—the power of "reformation and amendment"[11] under RJA § 2311 is not plenary, is qualified by the foregoing recited limitations, and may be utilized only to correct a "variation in the record" from that which in fact occurred in the judicial proceedings.

Suyak did not claim that the judgment entered was not, in fact, the judgment signed, but rather that the judgment entered should never have been signed. The order from which Creamery appeals was entered over the protests of Creamery and was not within the spirit[12] of RJA § 2311, which protects

---

[11] Added in 1857, at a time when the distinction between amendment before judgment, which could be "either in form or substance" (CL 1857, § 4415), and amendment after judgment, which was limited to "defects or imperfections, in matter of form" (CL 1857, § 4417), was, as in the revised statutes of 1838, still expressed in companion sections in just so many words and, therefore, the distinction was more apparent than it is today. Today, the power to amend process is set forth in GCR 1963, 102.3, while the power to amend pleadings is set forth, with great elaboration upon the simple language of 1838, in a separate provision, GCR 1963, 118.

[12] For the historically imbedded theme of RJA § 2311 and its predecessors in this regard, see the detailed and lengthy provisions for amendment "in affirmance of the judgments," so that it "shall not be stayed or reversed", "or reversed for default in form"; "but

the holder of the judgment and contemplates only orders of reformation and amendment "in affirmance of the judgment." If, as Creamery fears, the consequence of the order *nunc pro tunc* is to make the judgment dischargeable in bankruptcy, then that order, in its practical effect, was not "in affirmance of the judgment."

## IV.

We next consider whether the "order reforming and amending default judgment *nunc pro tunc*" is authorized by GCR 1963, 528.3, which provides that the court may "relieve a party or his legal representative from a final judgment" on the grounds— we mention only the specific grounds relied upon by Suyak—of "mistake, inadvertence, surprise or excusable neglect", or "fraud * * * misrepresentation or other misconduct of an adverse party", or "any other reason justifying relief from the operation of the judgment."

Rule 528.3 has its origin in the inherent power of a court of general jurisdiction to correct orders improperly entered.[13] In exercising such power, courts balance the policy favoring the correction of error and the policy favoring the finality of judgments. On this case's facts the trial judge was well justified (see part II of this opinion) in relieving Suyak from the default judgment, and his authority to do so under rule 528.3 is clear.

---

that all such omissions, variations, defects, and all other matters of like nature, not being against the right of the matter of the suit, nor whereby the issue or trial are altered, shall be amended", set forth in the act of October 13, 1820, 1 Laws of the Territory of Michigan 758, 761, 762, 763, carried forward into RJA § 2321 (CLS 1961, § 600.2321 [Stat Ann 1962 Rev § 27A.2321]) as to the matters referred to in RJA § 2315 (CLS 1961, § 600.2315 [Stat Ann 1962 Rev § 27A.2315]).

[13] Compare *E. C. Mahon Co.* v. *R. S. Knapp Co.* (1936), 277 Mich 103, 107; *Fraser* v. *Doing* (DC Cir, 1942), 130 F2d 617, 622.

We have considered whether the power set forth in GCR 1963, 528.3, permitting a trial judge on specified grounds to "relieve" a party from a final judgment, order or proceeding, confers authority to "modify" such a final judgment. There being no relevant Michigan authority, we have surveyed the plethora of cases in which Federal courts have exercised the power conferred by rule 60(b) of the Federal Rules of Civil Procedure (which in relevant part was copied word-for-word into GCR 1963, 528.3) and find that the typical Federal court order entered under rule 60(b) is one *vacating* the judgment or order in question. Modification, as distinguished from vacation, of permanent injunctions has with some frequency been directed under rule 60(b); however, the authority for such modification does not depend on court rule.[14] There seems to be some disagreement on the part of the Federal courts as to the means by which a modification of a noninjunctive final order may be obtained.[15]

## V.

In deciding this case it is not necessary to attempt to define the trial judge's power to *modify* a final judgment or order, or to frame a decree granting relief from a final judgment or order, since no rea-

[14] *Grand Union Equipment Co., Inc.,* v. *Lippner* (CA 2, 1948), 167 F2d 958, 961. That a court of equity has inherent power at any time upon a proper showing to modify a permanent injunction issued by it, see last cited case and 28 Am Jur, Injunctions, § 316, and annotations therein cited. To similar effect, see 43 CJS, Injunctions, § 218. The principle was acknowledged in *First Protestant Reformed Church of Grand Rapids* v. *DeWolf* (1960), 358 Mich 489, 495, and in *City of Troy* v. *Holcomb* (1961), 362 Mich 163, 169.

[15] Recognizing a power of modification under rule 60(b), see *United States* v. *Jacobs* (CA 4, 1961), 298 F2d 469, 473; *contra Bishop* v. *United States* (CA 5, 1959), 266 F2d 657, 659: "The relief provided by F R Civ P 60(b), of course, is merely to set aside a judgment." Compare *Fraser* v. *Doing, supra; Fiske* v. *Buder* (CA 8, 1942), 125 F2d 841, 845; *Gila River Ranch, Inc.,* v. *United States* (CA 9, 1966), 368 F2d 354, 357; *West Virginia Oil & Gas Co., Inc.,* v. *George E. Breece Lumber Co., Inc.,* (CA 5, 1954), 213 F2d 702.

son has been suggested why the parties now before
us should not have been permitted and required to
litigate the real issue that divides them, *i. e.*, the
nature of the indebtedness and whether it is soundly
grounded upon facts which make it nondischarge-
able in bankruptcy.

No reason was stated for the trial judge's refusal
to permit Creamery to amend its complaint, Suyak
to answer such amended complaint, and the parties
to proceed to a trial of the issues framed by such
pleadings.   We find nothing in the record which
supports the refusal of the trial judge to allow such
amendments.   Such refusal gave to Suyak more than
he would have received had his motion to set aside
the default judgment been granted.   Indeed, such
refusal put Suyak in a better position than had he
duly answered the complaint when it was filed and
served upon him.   In either such case, Creamery
could have sought leave to amend the complaint,
which "leave shall be freely given when justice so
requires."   GCR 1963, 118.1.

In our view the question before the trial judge
was not of the kind obliging us to defer to the trial
judge's judgment.   There is no disputed issue of
fact on the presented question.   There is no reason
to believe the trial judge was in a more advantage-
ous position than we to evaluate the situation.
There is no difficulty in stating a rule of decision
applicable to all similar cases.   We find support
for this approach in *Noonan* v. *Cunard Steamship
Co., Ltd.* (CA 2, 1967), 375 F2d 69, 71.[16]

"If this were truly the type of case where an
appellate court must respect the trial judge's exer-
cise of discretion, we might indeed be troubled in
saying, in Judge Magruder's oft-quoted phrase,

---

[16] In *Noonan* the court held that the trial judge erred in granting
a dismissal without prejudice in order to permit plaintiff to overcome
an inadvertent failure to make a timely jury demand.

that we had 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' *In re Josephson* (CA 1, 1954), 218 F2d 174, 182. However, we doubt that to be the appropriate test here; the fact that dismissal under Rule 41(a)(2) usually rests on the judge's discretion does not mean that this is always so. Several of the most important reasons for deferring to the trial judge's exercise of discretion—his observation of the witnesses, his superior opportunity to get 'the feel of the case', see *Cone* v. *West Virginia Pulp & Paper Co.* (1947), 330 US 212, 216 (67 S Ct 752, 91 L Ed 849), and the impracticability of framing a rule of decision where many disparate factors must be weighed, see *Atchison, T. & S. F. R. Co.* v. *Barrett* (CA 9, 1957), 246 F2d 846—are inapposite when a question arising in advance of trial can be stated in a form susceptible of a yes-or-no answer applicable to all cases."

Recently a panel of this Court considered a case with a fundamentally identical factual situation, except in that case the trial judge denied the defendant's motion to vacate the default judgment and granted plaintiff's motion to amend his complaint to conform to his proofs, without leave to the defendant to answer the amended complaint. In that case this Court, by an order not officially reported, set aside the default judgment and granted the defendant leave to answer plaintiff's amended complaint.

Where a default judgment, containing findings affecting the dischargeability in bankruptcy of the judgment debt, is entered on the basis of a complaint which does not (as required by GCR 1963, 111.1) state the facts on which the plaintiff relies with such specific averments as are necessary reasonably to inform the defendant of the nature of the cause he is called upon to defend, upon a motion for relief

from judgment the ends of justice will best be
served if the trial judge sets aside such judgment,
granting the plaintiff leave to amend his complaint
(GCR 1963, 118.1) and the defendant leave to
answer the amended complaint.

·Therefore, the default judgment entered on
November 19, 1965, as amended April 1, 1966, is
set aside. Creamery is granted leave to file an
amended complaint and the defendant is granted
leave to answer.

Reversed and remanded. Costs to appellant.

BURNS and MCGREGOR, JJ., concurred.