353 P.2d 760

Verna McGHEE, Plaintiff,

v.

Floyd McGHEE, Sarah L. Hess, Also known as Sarah McGhee, Defendants.

Sarah L. Hess McGHEE, Cross-plaintiff-Respondent,

v.

Floyd McGHEE, Cross-defendant-Appellant.

No. 8812.

Supreme Court of Idaho.

June 30, 1960.

Rehearing Denied July 28, 1960.

Stephen Bistline, Sandpoint, for appellant.

J. Ward & Pat W. Arney, Coeur d'Alene, for respondent.

KNUDSON, Justice.

Appellant, Floyd McGhee, and Verna McGhee (hereinafter referred to as Verna) were ceremoniously married May 26, 1944, which marriage continued until they were divorced April 17, 1957. Two children, ages eleven and thirteen, had been born the issue of said marriage. Following the divorce said parties lived separate and apart until about July 4, 1957, at which time they again commenced to live together as hus-

band and wife and continued so to do until August 12 or 13, 1958, at which time Verna left appellant and her children. On August 13, 1958, Verna married one, Lloyd Foster, which marriage was annulled in January, 1959.

Immediately following Verna's abandonment of appellant and her children on August 13, 1958, appellant began to keep company with respondent (Sarah L. Hess). Respondent at that time had been divorced and unmarried for approximately four years and had two children who were about the ages of appellant's children. On August 30, 1958, appellant and respondent were married. Following their marriage they and their children lived on appellant's farm near Sandpoint, Idaho, where they enjoyed a happy married life until the latter part of October, 1958, at which time appellant informed respondent that he wished her to get a divorce in order that he could resume living with his former wife, Verna.

In consequence of appellant's request and expressed desire, and without fault on the part of respondent, on or about the 3rd of November, 1958, respondent packed her effects and with her two children left appellant's premises. Within a day or two following respondent's departure the original plaintiff in this action, Verna, moved into the premises occupied by appellant where appellant and Verna resumed the status of husband and wife.

On November 6, 1958, Verna commenced this action against appellant and respondent, as defendants, praying for a decree annulling the purported marriage of appellant and respondent, alleging that appellant was married to her (Verna) on August 30, 1958.

Appellant did not file answer to said complaint. Respondent filed answer admitting her marriage to appellant and denying the remainder of the allegations in the complaint. Respondent also filed a cross-complaint against appellant, praying that if Verna and appellant were husband and wife on August 30, 1958, respondent's marriage be annulled or in the alternative that respondent be granted a divorce upon the grounds of extreme cruelty. Respondent also prayed for $10,000 damages, together with attorney fees and costs. Appellant filed his answer to respondent's cross-complaint in which he admits the marriage to respondent but alleges that such marriage was void by reason of his then existing common-law marriage to Verna.

The trial court granted respondent a decree annulling her marriage to appellant and allowed respondent damages in the sum of $3,000, together with $450 attorney fees and costs. Subsequent to the entry of the decree and filing of notice of appeal the trial court, upon application of respondent, entered an order granting attorney fees and costs of printing brief on appeal.

Under this appeal the validity of that portion of the decree granting annulment is not challenged. Appellant's principal assignment of error is that "the evidence does *not* support the decree in that *none* of the elements of actionable fraud are established excepting damages."

Appellant argues that respondent's right to recover damages in this case is dependent upon proof of all the elements of actionable fraud. Such is not the case. The allegations set forth in respondent's cross-complaint are sufficient to state a cause of action against appellant for constructive fraud. The distinction between actual fraud and constructive fraud is stated in 37 C.J.S. Fraud § 2, p. 211, as follows:

"Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual *dishonesty of pur*pose nor intent to deceive is an essential element of constructive fraud."

See Madden v. Caldwell Land Co., 16 Idaho 59, 100 P. 358, 21 L.R.A.,N.S., 332; Devers v. Greenwood, 139 Cal.App.2d 345, 293 P.2d 834; Bell v. Bell, 44 Ariz. 520, 39 P.2d 629.

In its generic sense constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equit-able duty, trust or confidence and resulting in damage to another. Constructive fraud usually arises from a breach of duty where a relation of trust and confidence exists; such relationship may be said to exist whenever trust or confidence is reposed by one person in the integrity and fidelity of another. In re Arbuckle's Estate, 98 Cal.App. 2d 562, 220 P.2d 950; Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680; 37 C.J.S. Fraud § 2, p. 214.

The record in the instant case discloses that although respondent and appellant had been casually acquainted for approximately three years they did not become well acquainted until about ten days or two weeks before they were married on August 30, 1958. Respondent testified that prior to her marriage to appellant she did not have knowledge of any facts which would lead her to believe that appellant was not at liberty to marry. In fact the following excerpt from appellant's testimony corroborates respondent in such contention:

"Q. And so Sarah had every reason to believe, as far as you were concerned, that you were a free agent to marry her when you married her on August 30? A. Yes.

"Q. And she went into this marriage in good faith, didn't she? A. Yes."

The record shows that appellant and Verna were divorced on April 17, 1957; they remained separated until July 4, 1957,

at which time Verna returned and they resumed, without celebration or solemnization of marriage, living together as husband and wife; that they continued such life until August 12 or 13, 1957, at which time Verna left. Appellant testified that he and Verna, as husband and wife, filed joint income tax returns (both State and Federal) for the year, 1957; that under date of November 6, 1957, they (as husband and wife) executed a chattel mortgage to the Idaho First National Bank upon some livestock and farm machinery as security for $15,000. Appellant also testified upon interrogation by his own counsel relative to his understanding as to his marital status up to August 13, 1958, as follows:

"Q. Now, is this true. While Verna was living with you out there from July of '57 until August of '58, did you consider that you were living together as husband and wife? A. Yes, yes.

\* \* \* \* \* \*

"Q. The point I was making earlier, did you or did you not feel that when you were living together with Verna that it was a husband and wife relationship? A. Yes, we felt —everybody concerned, the two children and me and her—all felt like we had the previous fourteen years. There was nothing any different. It was husband and wife relationship."

Respondent testified that the first time she heard anything of the possibility of a common-law marriage between appellant and Verna was about a month after appellant's and respondent's marriage; that upon hearing such rumor she asked appellant regarding it and appellant told her that he had consulted an attorney before he married respondent and that the attorney informed him there was no basis for such a common-law marriage; that she believed appellant and continued the marriage relationship.

The trial court found, upon competent evidence, that respondent did not know until late in October, 1958, the history of the relationship between appellant and Verna as to marriage. If appellant in fact believed and considered that he and Verna were husband and wife during the period between July 4, 1957, and August 13, 1958, it was clearly his duty to disclose such facts to respondent before he married her on August 30, 1958. Such concealment on the part of appellant was misleading and where, as here, there was a duty to speak because of a confidential relationship, a failure to do so is a specie of fraud for which equity may afford relief. Mills v. Mills, 147 Cal.App.2d 107, 305 P.2d 61; Larrabee v. Tracy, 21 Cal. 2d 645, 134 P.2d 265.

The fact that respondent continued to live with appellant after hearing the rumor would not necessarily change respondent's

rights. Whatever their relations to others may have been, they were conjugate; and their relations between themselves were as fiduciary as if their marriage had been a valid one. Respondent had a right to have confidence in appellant's explanation of the matter. It is the policy of the law, for the good of society demands it, that trust and confidence between husband and wife be sustained to the very limit.

The situation appellant finds himself in is entirely of his own making. In the absence of any reason to believe that appellant was incapacitated to marry, respondent had a right to rely on appellant's proffer of marriage as evidence that he was qualified to enter into the marriage relationship and she was not required to conduct an exhaustive examination of appellant as to his past conduct of living or to investigate the records of his prior divorce.

It is the duty of a person once married to know, before entering again into the marriage relationship, that the previous marriage has been dissolved (35 Am.Jur. 272). The appellant having proffered marriage to respondent and held himself out as one capacitated and qualified to enter into the marriage relationship and having entered into such relationship when he, in fact, had no such capacity, he therefore perpetrated a fraud upon respondent. Deeds v. Strode, 6 Idaho 317, 55 P. 656, 43 L.R.A. 207. In this connection a gen-

eral statement of the right of a woman who, through fraud or deceit on the part of her purported husband, has been induced into a marriage contract is as follows:

"A woman has a cause of action ex delicto against a man for fraud in knowingly misrepresenting that a certain ceremony makes them man and wife, where she is induced thereby to go through such ceremony and to live with him as his wife. A woman also has such a cause of action against a man where she enters into a marriage with him, misled by his misrepresentation or concealment to believe that he has capacity to marry her, at least where she subsequently cohabits with him, believing herself to be his wife." 35 Am.Jur. 343; Deeds v. Strode, supra; Larson v. McMillan, 99 Wash. 626, 170 P. 324; Blossom v. Barrett, 37 N.Y. 434, 97 Am.Dec. 747.

The general rule of damages applicable in such case is:

"Damages in an action by a woman against a man for fraud in inducing her to enter into a marriage are not limited to pecuniary loss, but cover change of single status, humiliation, disgrace, mental anguish, and deprivation of that conjugal society, comfort, and attention to which one is entitled by reason of the change from single to marital status. Such dam-

ages are naturally somewhat speculative, depending on the circumstances of the particular case, and their computation is largely in the discretion of the jury." 35 Am.Jur. 345; Leventhal v. Lieberman, 262 N.Y. 209, 186 N.E. 675, 88 A.L.R. 782; Beach v. Beach, 160 Iowa 346, 141 N.W. 921, 46 L.R.A., N.S., 98; Kujek v. Goldman, 150 N.Y. 176, 44 N.E. 773, 34 L.R.A. 156.

No error is claimed as to the amount of damages awarded, however appellant contends that the judgment for damages is a nullity since it purports to direct that the assessed damages be payable by the month. We find no merit to such contention nor has appellant supplied authorities or argument in support thereof. Sup.Ct. Rule No. 41; State v. Richardson, 56 Idaho 150, 50 P.2d 1012; Coffin v. Cox, 78 Idaho 111, 298 P.2d 742; Zenier v. Spokane International Rd. Co., 78 Idaho 196, 300 P.2d 494. Equity jurisdiction of the district court is not confined to statutory provision for its delineation, and is not subject to diminution by legislative acts. Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095. Where a court of equity has obtained jurisdiction of subject matter of dispute it will retain jurisdiction for settlement of entire controversy between the parties with respect thereto and will grant all proper relief consistent with the case and embraced within the issues. I.C. § 10-

704; Watkins v. Watkins, 76 Idaho 316, 281 P.2d 1057; Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Stearns v. Williams, 72 Idaho 276, 240 P.2d 833; Sims v. Purcell, 74 Idaho 109, 257 P.2d 242; Vanek v. Foster, 74 Idaho 532, 263 P.2d 997. The trial court concluded, as it had a right to do, that the facts and circumstances involved justified a privilege on part of appellant to retire the obligation of damages by installment payments. Obviously appellant is not injured by such privilege.

Appellant contends that the trial court abused its discretion in allowing respondent $450 as attorneys fees for legal services rendered in connection with the preparation and trial of this action. With this contention we disagree. Considering all the facts and legal questions involved we do not consider the amount fixed by the trial court to be excessive.

Appellant also contends that the trial court exceeded its jurisdiction in entering its order, after final decree, awarding respondent $200 attorneys fees on this appeal. Such contention is not without merit. It is generally held, under the general equity jurisdiction of the court, that if a husband institutes an action against a wife for annulment of a marriage alleged to be invalid and the invalidity of the marriage is in good faith disputed by the wife, she may be allowed temporary alimony, suit money and attorneys fees for

the purpose of presenting her contention. State ex rel. Wooten v. District Court of Silver Bow County, 57 Mont. 517, 189 P. 233, 9 A.L.R. 1212; Prince v. Freeman, 45 N.Mex. 143, 112 P.2d 821; Bernheimer v. Bernheimer, 103 Cal.App.2d 643, 230 P. 2d 17; Davis v. Davis, 12 Wash.2d 499, 122 P.2d 497; Whitebird v. Luckey, 180 Okl. 1, 67 P.2d 775, 110 A.L.R. 1279; Pierce v. Otte, 111 Colo. 374, 142 P.2d 283; Taylor v. Taylor, 66 Cal.App.2d 390, 152 P.2d 480; 55 C.J.S. Marriage, § 63, p. 944.

While the notice of appeal in this case provides that the appeal was "being taken upon questions of law and fact, and from the whole thereof", nevertheless the appeal as presented does not raise any issue as to that portion of the decree annulling the marriage to which respondent was a party. Notwithstanding the fact that such an issue could have been raised under appellant's notice of appeal, the fact is that no such issue was presented to this court for consideration. In the absence of an issue, upon this appeal, relative to the marital status of respondent, we know of no statute or generally accepted rule of law under which an allowance of attorneys fees can here be sustained, nor does respondent cite any such authorities.

We therefore conclude that the order of the trial court dated October 29, 1959, directing the payment of $200 attorneys fees be reversed and the decree appealed from be affirmed.

Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.