## SHENEMAN *v.* SHENEMAN

### OPINION OF THE COURT

1. DIVORCE—JUDGMENTS—DEFAULT JUDGMENT—SETTING ASIDE—RE-MARRIAGE—INCOMPETENTS.

Trial judge properly exercised his right to set aside a default judgment divorce even though the plaintiff had remarried a few days after the divorce and had died after the motion to set aside the default motion had been filed, served, and noticed for hearing where the defendant had waited only three and one-half weeks after the default judgment of divorce was filed to make a motion to vacate the judgment, the defendant was mentally incompetent at the time the divorce action was commenced, the defendant's motion alleged that the plaintiff knew of the defendant's condition, but did not reveal it to the court, and a guardian *ad litem* was not appointed for the defendant.

2. JUDGMENT—DEFAULT JUDGMENT—INCOMPETENTS.

A default judgment cannot be entered against an incompetent person unless he was represented in the action by a general guardian, guardian *ad litem*, or other such representative who has appeared in the proceedings (GCR 1963, 201.5, 520.2[2]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 24 Am Jur 2d, Divorce and Separation § 455.
  41 Am Jur 2d, Incompetent Persons §§ 123, 126.
[4, 5] 46 Am Jur 2d, Judgments §§ 776, 780.
[6, 7] 47 Am Jur 2d, Judgments § 1162.
[8] 46 Am Jur 2d, Judgments §§ 739, 740.
[9] 46 Am Jur 2d, Judgments § 682.
[10] 41 Am Jur 2d, Incompetent Persons § 124.
[11] 24 Am Jur 2d, Divorce and Separation § 273.
[12] 24 Am Jur 2d, Divorce and Separation §§ 426, 437, 441.
[13] 41 Am Jur 2d, Incompetent Persons §§ 123, 126.
[14, 15] 46 Am Jur 2d, Judgments §§ 739, 740.
[16] 46 Am Jur 2d, Judgments §§ 776, 780.
[17] 24 Am Jur 2d, Divorce and Separation § 25.
[18–20] 24 Am Jur 2d, Divorce and Separation §§ 469, 470, 473.
[21] 24 Am Jur 2d, Divorce and Separation §§ 926, 939, 942.
[22, 23] 24 Am Jur 2d, Divorce and Separation §§ 464–468, 472, 473.
[24, 25] 24 Am Jur 2d, Divorce and Separation § 440.
Vacating or setting aside divorce decree after remarriage of party. 12 ALR2d 153.

(1)

3. DIVORCE—JUDGMENT—DEFAULT JUDGMENT—INCOMPETENTS.

A default judgment of divorce cannot be entered against an incompetent person unless he was represented in the action by a general guardian, guardian *ad litem,* or other such representative who has appeared in the proceedings (GCR 1963, 201.5, 520.2[2]).

4. JUDGMENT—DEFAULT JUDGMENT—SETTING ASIDE—AFFIDAVITS—NECESSITY.

Setting aside a default judgment of divorce was proper even though the defendant failed to file an affidavit of merits where the plaintiff failed to make an answer to the motion to set aside the default judgment, the plaintiff did not file any counter-affidavit, the plaintiff waited until after the default judgment was set aside to assert that the defendant had not filed an affidavit showing a meritorious defense, the court took considerable testimony from the defendant witnesses showing that the defendant was mentally incompetent prior to and during the suit, the plaintiff proffered no witnesses, and the plaintiff did not object to the witnesses' testimony (GCR 1963, 520.4, 528.3).

5. JUDGMENT—DEFAULT JUDGMENT—AFFIDAVITS—NECESSITY—COURT RULE.

The necessity of filing an affidavit of merits with a motion to set aside a default judgment, as provided by court rule, is in the trial judge's discretion where a default judgment is set aside on the grounds of fraud, misrepresentation or misconduct of the adverse party, or on the ground that the judgment is void, or on the ground of any other reason justifying relief (GCR 520.4, 528.3).

6. JUDGMENT—VOIDABLE—DEFINITION.

A judgment is voidable where there are certain procedural irregularities, not amounting to a lack of jurisdiction over the person or the subject matter.

7. JUDGMENT—VOIDABLE JUDGMENT—SETTING ASIDE.

A voidable default judgment may be set aside in the trial court's discretion (GCR 1963, 528.3[4]).

DISSENT BY LEVIN, J.

8. JUDGMENTS—DEFAULT JUDGMENT—SETTING ASIDE—REQUIREMENTS—COURT RULE.

*Both good cause and a meritorious defense must be shown on a motion to set aside a default judgment on a ground set forth in GCR 1963, 528.3 (GCR 1963, 520.4, 528.3).*

9. JUDGMENTS—DEFAULT JUDGMENT—SETTING ASIDE—DISCRETION——LIMITATION—COURT RULE.

*The discretion of a trial judge to set aside a default judgment, although considerable, is not unlimited; the court rule requiring good cause and a meritorious defense must be obeyed (GCR 1963, 528.4).*

10. JUDGMENTS—INCOMPETENTS—VOIDABLE JUDGMENT.

*A judgment against a mentally incompetent person is not void, merely voidable.*

11. DIVORCE—INCOMPETENTS—COMPETENCY FOR DIVORCE.

*A judgment of divorce may be entered against a person who is mentally ill at the time of divorce, if he was competent at the time the grounds for divorce arose.*

12. DIVORCE—DEFAULT JUDGMENT—SETTING ASIDE—MERITORIOUS DEFENSE—COURT RULE.

*The requirement that a meritorious defense be shown whenever a default judgment is sought to be set aside applies in divorce cases (GCR 1963, 520.4).*

13. JUDGMENTS — INCOMPETENTS — DEFAULT JUDGMENT — SETTING ASIDE — MERITORIOUS DEFENSE — COURT RULE.

*The requirement that a meritorious defense be shown whenever a default judgment is sought to be set aside applies where the default judgment was entered against a mentally incompetent person for whom a guardian ad litem has not been appointed (GCR 1963, 520.4).*

14. JUDGMENTS — DEFAULT JUDGMENT — SETTING ASIDE — FRAUD — MERITORIOUS DEFENSE — COURT RULE.

*The requirement that a meritorious defense be shown whenever a default judgment is sought to be set aside applies where it is claimed that the judgment was procured by fraud (GCR 1963, 520.4).*

15. JUDGMENT — DEFAULT JUDGMENT — SETTING ASIDE — INCOMPETENTS — MERITORIOUS DEFENSE — COURT RULE.

*Setting aside a default judgment on the ground that the defendant, mentally ill at the time of the proceedings and not represented by a guardian ad litem, was unable to defend herself was error where the hearing on the motion to set aside the judgment did not focus on whether the defendant had a meritorious defense and the trial court's opinion did not advert to a meritorious defense (GCR 1963, 520.4).*

16. Judgment — Default Judgment — Setting Aside — Remand — Affidavit.

> *Defendant who sought to set aside a default judgment should be allowed to file an affidavit of merits where the defendant had not filed an affidavit because the trial judge did not insist upon it and granted defendant's motion to set aside the judgment on erroneous grounds (GCR 1963, 520.4).*

17. Marriage — Divorce — Remarriage — Voidable Judgment of Divorce — Effect.

> *A marriage entered into by the defendant who had been granted a judgment of divorce by default was valid even though the default judgment was voidable; the defendant's new wife was his lawfully wedded wife.*

18. Marriage—Death of Spouse—Judgment—Effect.

> *No judgment affecting marital status will be entered after the death of one of the spouses.*

19. Divorce—Death of Party—Effect—Judgment of Divorce.

> *A judgment of divorce will not be entered even though pending proceedings have reached an advanced stage where one of the parties to the marriage dies.*

20. Divorce—Death of Party—Effect—Judgment of Divorce—Setting Aside.

> *A judgment of divorce, including one obtained by default, will not usually be set aside after the death of one of the parties.*

21. Divorce—Death of Party—Effect—Judgment of Divorce—Property Rights.

> *A judgment of divorce entered while both parties were alive may be the subject of continuing legal struggles; litigation may continue after the death of one of the parties where property rights are disputed.*

22. Divorce—Remarriage—Effect—Judgment of Divorce.

> *Remarriage of one of the parties to a divorce judgment does not preclude setting aside the divorce judgment; however, the remarriage is a factor to be considered.*

23. Divorce—Death of Party—Remarriage—Effect—Judgment of Divorce.

> *Caution must be exercised to protect the new spouse of a plaintiff who was granted a default judgment of divorce and who has died; the former spouse must not be put in a better position than she would have been had she appeared and defended against the divorce.*

24. MARRIAGE—WIFE—STATUS—MULTIPLE WIVES.

*A man may have two wives in the sense that two women can have wife-status in respect to the same man; the situation of two women with wife-status with respect to the same man arises where the man has contracted a valid new marriage and the judgment of divorce dissolving his first marriage is set aside.*

25. MARRIAGE—WIFE—STATUS—DIVORCE.

*Both of the wives of a defendant, whose judgment of divorce terminating his first marriage was set aside after he had entered a second marriage, have the status of wife and they may claim support as wives; the children of both marriages are legitimate offspring.*

Appeal from Muskegon, Albert J. Engel, J. Submitted Division 3 October 8, 1969, at Grand Rapids. (Docket No. 5902.) Decided January 22, 1971.

Complaint by Paul C. Sheneman against Doris B. Sheneman for divorce. Default judgment for plaintiff. Defendant moved to set the judgment aside. Default judgment vacated. Plaintiff's administrator appeals. Affirmed.

*A. Winton Dahlstrom,* for plaintiff.

*James W. Bussard,* for defendant.

Before: R. B. BURNS, P. J., and HOLBROOK and LEVIN, JJ.

HOLBROOK, J. Plaintiff, Paul C. Sheneman, and defendant, Doris B. Sheneman, were married on June 19, 1943, at Lexington, Kentucky. One child, a daughter, Paula, was born of the marriage.

On August 4, 1967, plaintiff commenced a divorce action in Muskegon County against defendant. The complaint stated in part:

"That the parties have interest in and are the owners of the following mentioned property, *viz:*

"(a) The commercial real estate at 8720 Ferry Street, Montague, Michigan, known as Hoffman's, which is being purchased by the parties under a land contract upon which there is still owing approximately $29,000; that although both parties' names appear on said land contract as joint purchasers, the plaintiff is paying the monthly installments from the proceeds of the tavern business he operates in said commercial property.

"(b) The tavern business known as Hoffman's in Montague, Michigan, situated in the above mentioned premises at 8720 Ferry Street, Montague, Michigan; the said business is in plaintiff's name alone.

"(c) A residence house and lot in Lexington, Kentucky, standing in the joint names of the parties, upon which there is an indebtedness of approximately $14,000 owing to the Prudential Life Insurance Co.

"(d) A 1966 Oldsmobile automobile standing in plaintiff's name alone, and on which there is an indebtedness of approximately $1,200 owing to the Muskegon Bank & Trust Company."

It was also alleged there that the parties had lived together as husband and wife until on or about April 1967. The defendant and plaintiff had lived in an apartment above the tavern business. Defendant was living there at the time of the filing of the complaint and when she was served with process on August 4, 1967.

On October 16, 1967, default was filed and the testimony of plaintiff was taken. On November 2, 1967, judgment of divorce was filed, which provided for an absolute divorce to plaintiff and determined that no alimony be paid by the plaintiff. It further provided that plaintiff be awarded the tavern busi-

ness and the real estate where the business is located and the Oldsmobile, and awarded to the defendant the property at Lexington, Kentucky, subject to the mortgage thereon.

Plaintiff's attorney on or about November 3, 1967, sent a copy of the judgment of divorce, a quitclaim deed from plaintiff to defendant covering the. Lexington, Kentucky property, and a proposed quitclaim deed from defendant to plaintiff covering the Montague property by mail to defendant who was in Lexington, Kentucky, at her mother's.

On November 28, 1967, counsel for defendant filed a motion to vacate judgment for the reasons that at the time of commencement of the action, and for some time prior thereto, the defendant was mentally incopetent to represent herself or protect herself in said action; that the plaintiff well knowing of said condition, secured a judgment of divorce without revealing the defendant's mental condition to the court; that no appointment of a guardian *ad litem* was made; and that justice requires the judgment be set aside.

The motion was supported by an affidavit of the daughter of the parties, Paula Susterich, showing that defendant was mentally incompetent at all times during the proceedings and prior thereto. The motion to vacate judgment was noticed to be heard December 11, 1967.

It appears that plaintiff remarried sometime after the judgment was filed and before the motion to vacate judgment was filed, and that plaintiff committed suicide on December 4, 1967. Thereafter Hackley Union National Bank & Trust Company was substituted for plaintiff as administrator of his estate and Paula Susterich was appointed as guardian *ad litem* of the defendant.

A hearing on the motion to set aside the judgment was held February 14, 1968, with Mrs. Susterich, the daughter, her husband, Roger Susterich, Barbara Scott, a sister of defendant, Dr. Adolph F. Dasler, a psychologist, and Mrs. Doris Sheneman, the defendant, testifying.

Dr. Dasler, who examined the defendant the day before the hearing, testified in part:

*[Direct examination]*:

"*Q*. And your conclusion as to her mental condition at the present time is what?

"*A*. That she is mentally ill and has a diagnosis of schizophrenia simple type.

"*Q*. Do you recommend some treatment for this?

"*A*. I would very much so.

"*Q*. What type of treatment do you recommend?

"*A*. First of all, I do believe that she is not competent enough to be unsupervised. I believe that she should be under someone's care. I mean domiciliary care, 24-hour-a-day care, besides being seen regularly by a psychiatrist. And whether or not electric shock might be instituted again with a more modern technique today, more comfortable for her, that would remain in issue with the doctor that would be taking care of her.

\*      \*      \*

"*Q*. Now, your opinion is, today, that Mrs. Sheneman is mentally ill?

"*A*. Yes, sir.

"*Q*. And your opinion is that this mental illness antedated today by six months or more?

"*A*. Yes, sir."

*[Cross-examination]*:

"*Q*. One further question, Doctor.

"The tests you performed on Doris Sheneman yesterday do not conclusively show that she was

mentally ill prior to yesterday, do they, not conclusively?

"*A.* I'm afraid I didn't understand the whole question.

"*Q.* The tests that you performed in respect to Doris Sheneman yesterday do not and cannot conclusively show that she was incompetent before yesterday, do they?

"*A.* Well, with this H T P test we must conclude that this has been going on for quite some time.

"*Q.* And this is positively conclusive in your mind?

"*A.* In my mind this is the last nail and hammer that built the building."

Paula Susterich, daughter of the parties, testified in part as follows:

[*Direct examination*]:

"*Q.* Going back to the time preceding November 2, 1967, I ask you if you were aware that your father had filed a suit for divorce against your mother?

"*A.* Yes, sir.

"*Q.* Whether or not you had discussed it with him?

"*A.* Yes, sir, I did.

\*     \*     \*

"*Q.* Did you have some discussion with your father after the divorce was filed relative to his intentions?

"*A.* Yes, sir.

"And then several times he told me that he was considering not going through with it. And at one time he told me he could not go through with it because of the mental condition my mother was in.

"*Q.* Do you recall that last incident?

"*A.* Yes, sir.

"*Q.* Where did it take place?

"*A.* It took place on the sidewalk in front of Hoffman's Tavern in Montague.

"*Q.* Will you recall for the court, to the best of your recollection, just what was said?

"*A.* Well, I was taking my mother to Kentucky to get her help, because she was ill.

"And I asked him, I said: 'What happens if the divorce is called before the court and she isn't here?'

"And he looked at me and said: 'I am not going through with it. I can't get a divorce with your mother in the condition that she is in.'

"*Q.* Who said that?

"*A.* My father said it to me.

\*          \*          \*

"*Q.* You took your mother to Kentucky when?

"*A.* On the 4th of October.

\*          \*          \*

"*A.* Just a matter of a couple weeks after these papers were served she came and spent the weekend with us.

"And she would go to the door, and she would say: 'Don't you hear someone calling me?'

"And she would say: 'The television is on. Please turn it off.'

"And it wouldn't be on.

"And during the night she would come in our bedroom several times and say: 'Did you call me, Paula? Are you crying?'

"And she would wake me out of sleep. I had not been crying, I had not called her.

"And she would come and say: 'The house is on fire. We have got to get out.'

"And on a Monday morning when my husband got dressed to go to work my mother said: 'They have told me that they are going to get him. We can't let him go to work.'

"And we had to sit down with her and talk to her and try to convince her he had to go to work and he would be all right."

The husband of the daughter verified these occurrences and Mrs. Susterich testified that her mother

did not recognize her on October 3, 1967. The next day she took her mother to Kentucky, to be with her mother at Lexington. She also testified:

"*Q.* Going back to the time prior to the commencement of the action of this case, do you know what your mother's condition has been for the last years?

"*A.* Yes, sir. In March 1965, she had trouble just like this. And Christmas 1966, she did. And her father died in April 1967, and she has not been well at all since then."

Mrs. Susterich also testified that her father gave her some boxes of clothes of her mother's at Montague on November 24, 1967; that when she unpacked them, on November 25, 1967, she found exhibits 1 and 2, an envelope post-dated October 6, 1967, and notice to defendant of the pretrial date for the case, October 16, 1967; and that at the time of mailing defendant was in Kentucky. The inference is clear that the envelope and the notice went to the Montague address and the plaintiff put them amongst defendant's things and gave them to the daughter for her mother.

The trial judge in his written opinion granting the motion to set aside the default judgment of divorce stated in part:

"The testimony and inferences to be gained logically from it, leads inevitably to the conclusion on the part of the undersigned that Mrs. Sheneman was in fact at the time she was served and at all times up to and including the time when the judgment was taken against her, incompetent in the sense that she could not adequately comprehend the circumstances of the divorce and reach a rational decision with respect to her own role in it.   *   *   *   *
*Ex parte* proceedings at which a mentally incompetent wife is not represented in any way are hardly

conducive to a final decision as to whether or not the property settlement was in fact fair. This is also true when one considers that the husband retained for himself income-bearing property while giving to the wife non-income bearing property, it appearing at the same time that the wife was incompetent and completely unable to provide for herself. Certainly the waiver of any right to alimony under such circumstances is a serious matter and would be given great attention by any attorney or guardian *ad litem* acting on behalf of the wife."

The plaintiff raises two issues on appeal which we deal with in order.

# I

Can a default judgment of divorce be vacated by the circuit court after the plaintiff, in whose favor the judgment was rendered, has remarried and died?

Plaintiff asserts that *Zoellner* v. *Zoellner* (1881), 46 Mich 511, affirming the trial court in its denial of a motion to set aside a divorce decree, after the death of the prevailing party, is applicable to the instant case. In *Zoellner,* the other party waited for eight years after the divorce to move to set aside the default judgment. The Supreme Court noted this in its opinion and affirmed the denial of the motion to set aside the judgment, noting that defendant had grossly neglected to take care of her own rights. Defendant there was not mentally incompetent as defendant is in the instant case. Mrs. Sheneman did not wait eight or nine years to take action but acted within 3-1/2 weeks. The *Zoellner* case is not factually analogous and is not applicable. A case that squarely rules on the issue raised by plaintiff is *Allen* v. *Allen* (1954), 341 Mich 543. In *Allen,* the plaintiff wife had been

granted a *pro confesso* divorce decree October 19, 1948, on the ground of extreme cruelty. The defendant husband died in August 1951. On January 2, 1952, the administrator of his estate filed a petition in the divorce case to set aside a property settlement and the ensuing decree for divorce, on the ground of fraud. It seems that defendant was impotent, but still plaintiff was pregnant at the time of the divorce by another man, and she withheld these facts from the court in her testimony at the hearing for divorce. Immediately after the decree of divorce she married the other man. The trial court found that the fraud had been proven but denied relief because of defendant's inaction and failure to take any steps towards setting aside the decree during his remaining lifetime (2-1/2 years) and was guilty of laches.

The Supreme Court reversed, saying in effect that the fraud was a fraud practiced not upon defendant but upon the court, and it was ordered that the decree be set aside.

Under the rule of law set forth in *Allen* v. *Allen, supra,* as applied to the facts in the instant case, there is nothing to impede the setting aside of this default divorce judgment notwithstanding the marriage of the plaintiff within a few days after the divorce, or the death of plaintiff which occurred after the motion to set aside the default judgment was filed, served, and noticed for hearing.

## II

Can a default judgment of divorce be vacated on motion of defendant under GCR 1963, 528.3, when the defendant has not filed an affidavit of merits showing a meritorious defense in accord with GCR 1963, 520.4?

We will first discuss the law pertaining to judgments against incompetent persons:

GCR 1963, 201.5 provides:

"(1) Representation. Whenever an infant or incompetent person has a guardian of his estate, actions may be brought and shall be defended by such guardian in behalf of the infant or incompetent person. If an infant or incompetent person does not have such a guardian representing him as plaintiff, the court shall appoint a competent and responsible person to appear as next friend in his behalf who shall be responsible for the costs of the action. If there is no guardian of the estate representing an infant or incompetent person as defendant, the action shall not proceed until the court appoints a guardian ad litem who shall not be responsible for the costs of the action unless, by reason of personal misconduct on his part, he is specifically charged therefor by the court."

GCR 1963, 520.2(2) provides in part:

"By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, guardian ad litem, or other such representative who has appeared therein."

These rules forbid that a default judgment of divorce be entered against an incompetent person unless he was represented in the action by a general guardian, guardian *ad litem,* or other such representative who has appeared therein.

The trial judge determined that the defendant was incompetent prior to and during the pendency of the divorce proceedings. This default judgment was voidable upon proper proceedings brought by the defendant and approved by the trial court.

*Great Lakes Realty Corporation* v. *Peters* (1953), 336 Mich 325; *Cohen* v. *Home Life Insurance Co.* (1935), 273 Mich 469.

We now turn to the requirements of a motion to set aside a default judgment.

GCR 1963, 520.4 provides:

"Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 528. If personal service was made upon the party against whom the default was taken, it shall not be set aside unless application to have it set aside is made either before the entry of judgment or within 4 months after the default was regularly filed or entered except as provided in Rule 528. Any order setting aside such default shall be conditioned upon the party against whom the default was taken paying the taxable costs incurred by the other party in reliance upon the default, except as prescribed in subrule 526.8. Other conditions may be imposed as the court deems proper. A proceeding to set aside default or a default judgment, except when grounded on want of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed."

GCR 1963, 528.3 provides in part:

"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under subrule 527.2; (3) fraud (whether heretofore denominated

intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

Plaintiff failed to make answer to the motion to set aside the default judgment or file any counter-affidavit. At no time until after the trial court filed its opinion granting an order setting aside the default judgment did plaintiff assert that defendant had failed to file an affidavit showing a meritorious defense on the merits. The court took considerable testimony from witnesses produced by defendant. Plaintiff did not proffer any witnesses. The testimony of defendant's witnesses was not objected to and the same may take the place of an affidavit of merits.[1] We do not deem it necessary to rule on the necessity of defendant filing an affidavit of merits under the facts in this case. We do, however, rule that GCR 1963, 520.4 requiring an affidavit of merits to be filed with a motion to set aside a default may, at the discretion of the trial judge, not be mandatory when a default judgment is set aside based on GCR 1963, 528.3(3), (4), and (6).

In 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 187 under authors' comments, pertaining to GCR 1963, 528.3(4), *void judgment,* it is stated in part as follows:

"Certain procedural irregularities, not amounting to a lack of jurisdiction over the person or subject matter, are sometimes characterized as making a

---

[1] Sufficient facts were shown to justify the setting aside of the default judgment.

judgment 'voidable'. This apparently means no more than that the judgment *may be set aside upon a timely application in the same proceedings as a matter of judicial discretion.* See *Curtis* v. *Curtis* (1930), 250 Mich 105, 107 (229 NW 622, 623);[2] *Home Life Ins. Co.* v. *Cohen* (1936), 278 Mich 169 (270 NW 256)." (Emphasis supplied.)

It appears to this Court that a voidable judgment is within the meaning of GCR 1963, 528.3(4) provided the trial judge in his discretion determines to set it aside.

The discretion that is inherent in the trial court upon an application to vacate a default judgment will not be interfered with on appeal unless that discretion is clearly shown to have been abused. *Seifert* v. *Keating* (1955), 344 Mich 456. Also, see, *Tyler* v. *Tyler* (1957), 348 Mich 169, 171.[3]

In the case of *Schuman* v. *Schuman* (1921), 217 Mich 184, it was ruled that where defendant was 80 years of age, feeble, and in poor health, default judgment against him should be set aside as the interests of the aged "are of tender concern to a court of equity". The same can be said of the defendant here, a mentally incompetent unable to care for herself and requiring constant care: *the interests of such incompetents are of tender concern to a court of equity.*

We conclude that under GCR 1963, 528.3, the trial court had the power to set aside the default

---

[2] "Failure to do so (to have a guardian *ad litem* appointed), however, did not oust the court of jurisdiction, for the statute mentioned is procedural only, but did render the decree voidable if questioned in a direct proceeding such as this. When a decree is voidable for error in procedure, it is a matter of judicial discretion whether it shall be vacated."

[3] It appears that the trial judge on his own motion could set aside a default judgment where a plaintiff withheld pertinent facts concerning his wife's physical condition (expecting a baby) or his wife's mental condition as in the instant case where she is mentally incompetent and requires constant care and attention.

judgment and that under the facts in this case it did not abuse its discretion in so doing.

Affirmed. Costs to the defendant.

R. B. Burns, P. J., concurred.

Levin, J. (*dissenting*). I dissent because the motion to set aside the default judgment was not supported by an affidavit of merits.

## I.

GCR 1963, 520.4, provides that a motion to set aside a default judgment under rule 528 "shall be granted *only* if good cause is shown and an affidavit of facts showing a meritorious defense is filed". (Emphasis supplied.) We have recently held that the requirements that both good cause and a meritorious defense be shown are applicable where it is sought to set aside a default judgment on a ground set forth in GCR 1963, 528.3.[1]

While trial judges enjoy considerable discretion in deciding whether to set aside a default judgment, that discretion can be invoked only by the defaulted defendant making the showing required by rule 520.4. Trial judges do not enjoy a general power of dispensation authorizing them to set aside defaults and default judgments.[2]

It is particularly important to enforce the requirement that a meritorious defense be shown in the present case because, as will appear, it is now no longer possible to obtain an adjudication on the merits of Paul Sheneman's complaint for divorce and, thus, setting aside the judgment of divorce

---

[1] *Sylvania Savings Bank* v. *Turner* (1970), 27 Mich App 640.

[2] See *Petersen* v. *Wayne Circuit Judge* (1928), 243 Mich 600; *Low* v. *Mills* (1886), 61 Mich 35, 43, 45; *Kelso* v. *Kelso* (1962), 78 Nev 99 (369 P2d 668).

may place Doris Sheneman in a better position than she would be had she defended on the merits.

A judgment against a mentally incompetent person is not void, merely voidable.[3]   Even if Doris Sheneman was mentally ill at the time of the divorce, if she was competent when the grounds for divorce arose a judgment of divorce based on those grounds could properly be entered.[4]   The judge recognized this, but, I think erroneously, said that even if there were "good and adequate grounds" for divorce before she became mentally ill and even if the property settlement was "completely fair", since she was not competent and was not represented the divorce judgment must be set aside because the procedure followed was not "conducive to a final decision as to whether or not the property settlement was in fact fair".

But, the judge did more than merely reconsider the property settlement provisions of the judgment; he set the judgment aside in its entirety.   Had he not set aside the judgment, had he set a time for a hearing focused on the fairness of the financial provisions and if the issue before us was whether a modification of those provisions was proper, a different question would be presented.[5]

The requirement that a meritorious defense be shown whenever it is sought to set aside a default judgment applies in divorce[6] as well as in other civil cases.[7]   It applies as well where the judgment

---

[3] *Great Lakes Realty Corporation* v. *Peters* (1953), 336 Mich 325, 332; *Cohen* v. *Home Life Insurance Co.* (1935), 273 Mich 469, 472.

[4] See *Vial* v. *Vial* (1963), 369 Mich 534.

[5] See *Wayne Creamery* v. *Suyak* (1968), 10 Mich App 41, 52.

[6] *Paynton* v. *Paynton* (1916), 194 Mich 504, 508.   See, generally, 24 Am Jur 2d, Divorce and Separation, § 439, p 563; *Schrader* v. *Schrader* (1966), 242 Or 526 (410 P2d 1017); *Kelso* v. *Kelso, supra,* fn 2.

[7] See *Hartman* v. *Roberts-Walby Enterprises, Incorporated* (1969), 17 Mich App 724; *McDonald* v. *Kersten* (1970), 24 Mich App 681; *Rencsok* v. *Rencsok* (1969), 16 Mich App 643.

has been entered against a mentally incompetent
person for whom a guardian *ad litem* has not been
appointed[8] and, also, where it is claimed that the
judgment was procured by fraud.[9]   In innumerable
cases[10] the Michigan Supreme Court has ruled that
a default judgment cannot be set aside unless an
affidavit of merits, or its equity-side equivalent
under the former practice, a sworn answer,[11] is
filed.   Where the Court has observed that a judge
may in his discretion open a default judgment, it
has also commented regarding the necessity of the
defendant showing that he has a meritorious de-
fense.[12]

---

[8] *Home Life Insurance Co.* v. *Cohen* (1936), 278 Mich 169, 172.

If the defendant is not able, because of mental incompetence, to
file a supporting affidavit, then someone else, having knowledge of
the facts, can file the affidavit.   *Cf. Hartman* v. *Roberts-Walby Enter-
prises, Incorporated, supra,* p 729.

[9] *Sylvania Savings Bank* v. *Turner,* fn 1, *supra; Stradley* v. *Circuit
Judge* (1893), 96 Mich 287, 290.

[10] See *Feierabend* v. *Manistee Circuit Judge* (1931), 253 Mich 115,
116; *Hews* v. *Hews* (1906), 145 Mich 247, 255; *McGurrin Sales Agency*
v. *Jackson Circuit Judge* (1921), 215 Mich 214, 218, 221; *Ross* v.
*St. Clair Circuit Judge* (1939), 291 Mich 70, 72; *Paynton* v. *Paynton*
(1916), 194 Mich 504, 508; *Emery* v. *Airth* (1914), 180 Mich 433,
438; *Walsh* v. *Wayne Circuit Judge* (1889), 76 Mich 470; *Stradley* v.
*Circuit Judge, supra; Abstract and Title Guaranty Co.* v. *Williams*
(1962), 367 Mich 620, 624; *Hart* v. *Lindsay* (1842), Walk Chanc 72,
74; *Thayer* v. *Swift* (1844), Walk Chanc (Mich) 384, 386; *Smith* v.
*Saginaw City Bank,* Harr Chanc (Mich) 426.

See, also, *Hartman* v. *Roberts-Welby Enterprises, Incorporated*
(1969), 17 Mich App 724, 727; *Rencsok* v. *Rencsok* (1969), 16 Mich
App 643.

Similarly, see *Gillett* v. *Arnt* (Cir Ct, 1869), 1 Mich NP 201;
*Carton* v. *Day* (1909), 157 Mich 43, 44; *Bank of Michigan* v. *Williams,*
Harr Chanc (Mich) 219; *Stockton* v. *Williams,* Harr Chanc (Mich)
241, 242.

[11] Under the former court rule (Court Rule No 28, [1945]), it was
necessary to file an affidavit of merits in support of a motion to set
aside a default in an action at law; in suits in equity the defendant
was required to "proffer a sworn answer showing a defense on the
merits to the whole or a part of the plaintiff's case."

[12] See *Orlich* v. *Houghton Circuit Judge* (1929), 246 Mich 487, 489;
*Seifert* v. *Keating* (1955), 344 Mich 456; *McDonough* v. *General
Motors Corporation* (1967), 6 Mich App 239; *Rhodes* v. *Rhodes* (1966),
3 Mich App 396, 402.

The testimonial hearing on Mrs. Sheneman's motion to set aside the default judgment rendered against her did not focus on the question whether she had a meritorious defense. The witnesses testified concerning her inability to defend herself, not on the meritorious question. The judge's opinion discusses only the capacity-to-defend question; he did not advert to the question whether Mrs. Sheneman had a meritorious defense nor did he say that she had shown that she had or might have a meritorious defense. On the contrary, he said that, "Very possibly good and adequate grounds existed before Mrs. Sheneman became mentally ill or at times when she was lucid and perhaps even Mr. Sheneman's testimony at the time reflected this. Neither does it appear clearly that the property settlement incorporated into the judgment of divorce was inequitable. It may have been completely fair". It is evident that it was the judge's conclusion that, without regard to whether Mrs. Sheneman had a meritorious defense or whether the property settlement was in fact fair, it should be set aside because she was incapable of defending herself.

Since the hearing did not focus on the meritorious question—there was no testimony by any witness or other evidence offered on that question—and since the judge did not in his opinion find merit, but, on the contrary, set aside the default judgment without regard to whether there was a meritorious defense, I cannot agree with the statement in the majority opinion that the testimony of Mrs. Sheneman's witnesses "may take the place of an affidavit of merits".

In *Schuman* v. *Schuman* (1921), 217 Mich 184, cited by the majority, the defendant showed that he had a meritorious defense. In *Seifert* v. *Keating* (1955), 344 Mich 456, and *Tyler* v. *Tyler* (1957),

348 Mich 169, the defendants' motions to set aside default were accompanied by sworn answers.[13] Thus, in all three cases, the court-rule requirements were complied with.[14]

A decision that the order appealed from should be reversed would not end this litigation, nor should it. Had the judge required the filing of an affidavit of merits, Mrs. Sheneman might have complied. She should not be deprived of an opportunity to do so because the judge did not insist upon it. Accordingly, I would remand with instructions that she be given an opportunity to file an affidavit of merits in support of her motion.[15]

## II.

I now address myself to other issues which, no doubt, would arise again if the judge, after a proper showing of a meritorious defense, is moved to set aside the default judgment.

After 24 years of marriage the plaintiff husband commenced an action for divorce. His wife was duly served with a copy of the summons and complaint. She did not appear or answer and a default judgment of divorce was entered on November 2, 1967.[16]

---

[13] See fn 11.

[14] As to the two cases cited in the quotation from 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 187, in *Home Life Insurance Co.* v. *Cohen* (1936), 278 Mich 169, 172, the Court specifically pointed out, in affirming the trial judge's decision not to set aside the default, that the defendant had failed to show that she had a meritorious defense. In *Curtis* v. *Curtis* (1930), 250 Mich 105, the defendant showed a possible meritorious defense, namely, cohabitation of the parties after filing of the suit for divorce.

[15] *Cf. Wayne Creamery* v. *Suyak* (1968), 10 Mich App 41, 53.

[16] Three and a half weeks later, on November 28, 1967, Doris Sheneman moved to vacate the judgment claiming that because of her mental condition, which was well known to Paul Sheneman, she was not competent to represent or protect herself in the action and, thus, a guardian *ad litem* should have been appointed to represent her. See GCR 1963, 520.2(2), 201.5. After a hearing, at which Doris

The judgment awarded Paul Sheneman the tavern business which he operated and the real estate on which it was conducted and Doris Sheneman real estate in Kentucky, their former domicile. There was no provision for alimony.

After the judgment of divorce was entered, Paul Sheneman married Beverly Nowak on November 7, 1967. On December 4, 1967, after Doris moved to vacate the judgment of divorce and before the hearing on the motion, Paul committed suicide.

Again it is pertinent that the judgment of divorce entered in this case is not void, it is voidable.[17] Thus, the marriage between Paul and Beverly was valid when entered into. When Paul died, Beverly was his lawfully-wedded wife, not Doris.

It is, as Paul Sheneman's executor contends, a general rule that no judgment affecting marital status will be entered after the death of one of the parties. Thus, after the dissolution of the union by death, a judgment of divorce will not be entered even though pending divorce proceedings have reached an advanced stage before the death.[18] Similarly, after the death of one of the parties, a judgment of divorce, including one obtained by default, will not ordinarily be set aside.[19]

However, and on this the majority and I are in agreement, if a judgment of divorce is entered while both parties are living, it may be the subject of

---

Sheneman, the adult daughter of the parties and other witnesses, including a physician, testified, the judge found that Doris Sheneman was not competent to attend to her affairs and entered an order setting aside the default judgment of divorce.

[17] See cases cited in fn 3.

[18] See *Seibly* v. *Circuit Judge* (1895), 105 Mich 584, 586; *Heck* v. *Bailey* (1918), 204 Mich 54; *Wilson* v. *Wilson* (1889), 73 Mich 620. See, also, *Crockett* v. *Consolidated Paper Co.* (1937), 281 Mich 571; contrast *Hess* v. *Pettigrew* (1933), 261 Mich 618. See, generally, 24 Am Jur 2d, Divorce and Separation, § 435, p 559.

[19] *Zoellner* v. *Zoellner* (1881), 46 Mich 511, 513. See, generally, 24 Am Jur 2d, Divorce and Separation, § 469, p 592.

continuing legal struggles. If the judgment reserves the question of alimony, a motion for alimony may be entertained after the husband's death.[20] The estate of a deceased defendant husband was permitted to prosecute an appeal from a divorce judgment after his death "in view of the fact that property rights are involved".[21] Similarly, in a case where the wife died after obtaining a divorce, it was held that her death did not end the litigation and that her personal representative could defend against the husband's appeal.[22] It has also been held that the personal representative of a deceased wife may pursue her appeal seeking a larger share of the property than was awarded in the judgment: "litigation of this character, insofar as it involves property rights, survives the death of one of the parties litigant".[23]

The concept that where property rights are in dispute litigation may continue after the death of one of the parties has also been recognized in cases where, as here, it was sought to vacate a judgment of divorce. In *Allen* v. *Allen* (1954), 341 Mich 543, 548, the Michigan Supreme Court set aside a divorce judgment entered almost three years before the defendant husband's death, saying that neither the remarriage of the plaintiff wife nor the death of the defendant barred "reopening the case or setting aside the decree on the ground of fraud on the court,[24] insofar as it involved property rights".[25]

---

[20] *Seibly* v. *Circuit Judge* (1895), 105 Mich 584, 586. *Cf. Braffett* v. *Braffett* (1944), 308 Mich 506.

[21] *Listh* v. *Listh* (1951), 329 Mich 579, 581.

[22] *Hagerty* v. *Hagerty* (1923), 222 Mich 166, 168.

[23] *Workman* v. *Peterson* (1950), 327 Mich 456, 458.

[24] *Cf. Curtis* v. *Curtis* (1930), 250 Mich 105, 109; see *McDonald* v. *Kersten* (1970), 24 Mich App 681.

[25] Contrast *Zoellner* v. *Zoellner* (1881), 46 Mich 511, 514, concerning the form of the remedy in such a case.

While remarriage of one of the parties does not preclude setting a divorce judgment aside,[26] it is a factor to be considered. In such a case the courts will proceed with great caution[27] and will exercise their discretion depending on the facts of the particular case.[28] Similarly, where the merits of a plaintiff's action for divorce cannot be litigated because he is dead,[29] caution should be exercised both to protect the new spouse and any offspring of the new union and to avoid putting the former spouse in a better position than she would have been in had she appeared and defended. Both factors, remarriage and death, are present in this case.

## III.

If the judgment of divorce is set aside, there remains the question: what is the marital status of the two wives?

Our society is organized on the tenet that a man can have but one wife. But that premise does not dissolve the difficult problem which confronts a court of justice in this case. If the judgment of divorce is set aside, the marriage of Paul and Doris

[26] See *Allen* v. *Allen* (1954), 341 Mich 543; *Czyzewski* v. *Czyzewski* (1943), 304 Mich 402, 404; *Lantinga* v. *Lantinga* (1947), 318 Mich 78, 81; *Curtis* v. *Curtis* (1930), 250 Mich 105, 109.

[27] See 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments, p 181; *Osborne* v. *Osborne* (1962), 60 Wash 2d 163 (372 P2d 538); *Hemphill* v. *Quigg* (Mo, 1962), 355 SW2d 57.

*Cf. Zirkalos* v. *Zirkalos* (1949), 326 Mich 420; *Livingston* v. *Livingston* (1936), 276 Mich 399; *Hess* v. *Pettigrew* (1933), 261 Mich 618; *Zoellner* v. *Zoellner* (1881), 46 Mich 511; *Carlisle* v. *Carlisle* (1893), 96 Mich 128.

[28] *Paynton* v. *Paynton* (1916), 194 Mich 504, 507; 24 Am Jur 2d, Divorce and Separation, § 466, pp 589, 590.

[29] *Cf.* 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments, p 181; *Osborne* v. *Osborne, supra; Hemphill* v. *Quigg, supra.*

One of the reasons frequently advanced for setting aside a default judgment is that the courts favor adjudication on the merits; that is not feasible in this case.

cannot be reinstated—he is dead. If the vacation of the judgment is, nevertheless, regarded as restoring Doris' marital status, this should not denigrate Paul's marriage with Beverly—perfectly valid when contracted[30]—who, thereupon, in the eyes of the law, as well as in a larger sense, became his wife and who was his wife when he died. For all that appears in this record, the second marriage was entered into in good faith by Beverly and is entitled to full recognition.

The apparent assumption of the cases is that if the first marriage is reinstated the second marriage is automatically dissolved.[31] That might be the preferable result if there is a first marriage relationship that can possibly be reinstated;[32] although it is to be doubted whether many divorced persons who have remarried will leave their new mates and return to their former spouses simply because a court has entered an order vacating a decree of divorce. Nevertheless, even if pursuit of that elusive objective is thought to be worth the destruction of the second marriage, where, as here, the marriage relationship cannot be restored, it seems

---

[30] Paul's marriage to Beverly did not violate the statute regarding solemnization of marriages; that statute provides: "No marriage shall be contracted whilst either of the parties has a former wife or husband living, unless the marriage with such former wife or husband shall have been dissolved." MCLA § 551.5 (Stat Ann 1957 Rev § 25.5). Paul's marriage to Doris had been dissolved when he married Beverly.

Nor was the second relationship polygamous (see MCLA § 750.439 [Stat Ann 1954 Rev § 28.694]) or adulterous (see MCLA § 750.29 [Stat Ann 1962 Rev § 28.218]).

[31] See *Mazzei* v. *Cantales* (1955), 142 Conn 173 (112 A2d 205).

The need to protect an innocent first spouse from an improper divorce is apparently regarded as more deserving of protection than the need of an innocent second spouse and offspring of the second marriage to protection from re-establishment of the dissolved union.

[32] It is more likely that the reason for the rule preferring the first marriage even after a remarriage following a valid but voidable divorce is historical. Among the threads of anglo-saxon law is a preference for neat categories and the primogenial.

quixotic to insist that Paul was not married to Beverly when he died because, when this litigation ends, it may be decided that an erroneous judgment was entered.

Under the circumstances it may be wiser to recognize, as much as it goes against the grain, that a man may indeed have two wives. Or, if it sounds better, a man cannot have two wives, but two women can have wife status in respect to the same man.[33] It is untidy, but it is clearly more realistic and probably more just.

Recognizing that a man who contracts a second marriage may find himself with two wives if the judgment dissolving his first marriage is set aside, permits both wives to claim support as wives and the children of both marriages to be regarded as legitimate offspring. The awkward situation of two wives occurred not because Paul violated the law but because, and again I proceed on the assumption that the divorce is properly set aside, our imperfect adjudicative process allowed an erroneous judgment to be entered. And even if Paul is partially, or even wholly, to be blamed for what occurred, that is not a good reason for punishing a new and blameless wife or, in another case, children of the new union.

Society's rules would, of course, be offended if a husband sought to live with more than one wife. That would present a problem with which we are not now confronted. Our concern that a man should not be in a position to claim the right to live with more than one woman as his lawful wife should

---

[33] It is reported that Pope Clement VII proposed to Henry VIII that if he would desist in his efforts to have his marriage with Catherine dissolved he would be allowed to take a second wife; and that there was precedent for this dispensation. Henry IV of Castile had been allowed, because his first wife was childless, to marry a second time, without dissolving the first marriage. See Pollard, *Henry VIII* (Harper & Row ed 1966), pp 166, 167.

not deter us, in a case such as this, from treating both lawfully-wedded wives as entitled to support and a share of his property.

Where the husband is dead we need not conjure up the problem that he might seek to exercise his conjugal rights with both wives. While that might possibly occur in another case, it is just as likely that the husband will only wish to live with or be welcomed by one of the wives. In this case, the husband decided to live with neither of them and committed suicide when confronted with the problem.

In some jurisdictions a good-faith putative marriage is recognized despite impediments to its full validity.[34] In other jurisdictions the courts have by various techniques provided for the support of, or for the transfer of a portion of the property accumulated during the second "marriage" to, the innocent second "wife".[35]

A putative wife's clearest remedy may be an action for breach of implied warranty or misrepresentation against her spouse or, in this case, his estate.[36] It is ironic that Doris' success in having

---

[34] 35 Am Jur, Marriage, § 52, p 215.

[35] 35 Am Jur, Marriage, § 53, p 216; *Walker* v. *Walker* (1951), 330 Mich 332, 336 (31 ALR2d 1250); Anno: Rights and remedies in respect of property accumulated by man and woman living together in illicit relations or under void marriage, 31 ALR2d 1255.

*Cf. Sledd* v. *State Compensation Commission* (1932), 111 W Va 509 (163 SE 12, 13; 80 ALR 1424); *Buck* v. *Buck* (1967), 19 Utah 2d 161 (427 P2d 954).

[36] Upon entering into a marriage ceremony each party impliedly warrants and represents that he is free to marry. 2 Cooley on Torts (4th ed), § 177, p 44. See, also, 35 Am Jur, Marriage, § 242, p 343; Anno: Liability of one putative spouse to other for wrongfully inducing entry with or cohabitation under illegal, void, or nonexistent marriage, 72 ALR2d 956.

The right of action is not restricted to cases of deliberate fraud as in *Sears* v. *Wegner* (1907), 150 Mich 388. In Michigan, in an action for damages for misrepresentation, it is not a defense that the representation was innocently made in the good faith belief that it was true. *Irwin* v. *Carlton* (1963), 369 Mich 92. There is no sound reason why this rule should be restricted to commercial transactions; the intimate relationship here involved is entitled to at least as much protection. *Cf. McGhee* v. *McGhee* (1960), 82 Idaho 367 (353 P2d

the judgment of divorce set aside warrants Beverly's legal action. Beverly's claim as a judgment creditor might take priority over the rights of Doris and other heirs to distributive shares. But Beverly probably would not have a right of action against Paul's estate if the relief awarded Doris is confined to modification of the financial terms of the divorce judgment and Beverly's status as his wife remains unaffected.

There is room for flexibility in the administration of the law within the framework of competing doctrines.[37] Our jurisprudence has achieved sufficient maturity so that any appropriate adjustments in the sharing of Paul's estate[38] might be made without treating the second and lawful marriage, brief as it was, as if it never occurred.

---

760, 762). Also cf. Prosser, Law of Torts (3d ed), § 102, pp 713, 725. As Dean Prosser points out, whether the action against an agent for breach of an implied representation or warranty of authority is founded on a contract or tort theory the defendant's liability does not depend on proof of his knowledge of the falsity of the representation or warranty.

The heart balm act (MCLA § 551.301 [Stat Ann 1957 Rev § 25.191]), abolishing the action for breach of a contract to marry, does not bar an action based on the illegality of a marriage. *Tuck v. Tuck* (1964), 14 NY2d 341 (200 NE2d 554); *Morris v. MacNab* (1957), 25 NJ 271 (135 A2d 657).

[37] See *Van Haltern v. Van Haltern* (1958), 351 Mich 286; *Buck v. Buck* (1967), 19 Utah 2d 161 (427 P2d 954).

[38] As to insurance, social security and pension rights, they may perhaps be ordered to be shared or, if that appears to present intractable difficulties, adjustment in the property sharing could be made to compensate for advantages flowing to one spouse in preference to another by virtue of her enjoying "widow" status. I understand, although I have no authority to cite, that the Department of Health, Education and Welfare, Social Security Administration, has, in some cases, authorized full payment to more than one woman as the surviving spouse where both meet the definition set forth in 42 USC § 416(h)(1)(A).